UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA PIAZZA, JOSEPH BORDEN, and RICHARD YUNKER,<br><br>Plaintiffs,<br><br>v.<br><br>SANTANDER CONSUMER USA INC. and JMAC DISTRIBUTION LLC,<br><br>Defendants. | Civil Action No. 1:19-cv-11697-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
SANTANDER CONSUMER USA INC.'S MOTION TO DISMISS
COUNT I OF PLAINTIFFS' COMPLAINT**

Michael T. Grant (BBO No. 677893)
Charles A. Ognibene (BBO No. 300774)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: +1 857 488 4200
Fax: +1 857 488 4201
MTGrant@duanemorris.com
CAOgnibene@duanemorris.com

Robert J. Brener (*pro hac* motion to be filed)
DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, NJ 07102-5429
Telephone: +1 973 424 2000
Fax: +1 973 424 2001
RJBrener@duanemorris.com

Dated: August 13, 2019

DM3\5970716.6

**PRELIMINARY STATEMENT**

The present case concerns the content of pre-sale notifications sent by Defendant auto finance company Santander Consumer USA Inc. ("SC") to Plaintiffs after it repossessed automobiles purchased on credit held by SC.

By written notice in December 2018 and January 2019, SC informed Plaintiffs that their vehicles had been repossessed and—if not timely redeemed—would be sold at a private sale. The notices followed the "safe-harbor" form contained in Article 9 of the Massachusetts Uniform Commercial Code (the "UCC"), M.G.L. c. 106 § 9-614(3), which form summarizes a consumer-debtor's financial obligation to a creditor following the sale of the consumer's repossessed vehicle. UCC § 9-614(3) states that the safe-harbor form "provides sufficient information" to the consumer prior to the sale of the repossessed vehicle.

The pre-sale notices also stated that the proceeds from the sale of these vehicles would be credited against their indebtedness "subject to applicable law (including Mass. Gen. Laws ch. 255B § 20B)." Section § 20B of the Motor Vehicle Retail Installment Sales Act ("RISA"), M.G.L. c. 255B, allows SC to recover from a consumer the deficiency resulting from deducting the fair market value of the vehicle from the consumer's unpaid balance.

Notwithstanding that SC's pre-sale notices followed both the UCC safe-harbor form and incorporated by reference the deficiency calculation under RISA, Plaintiffs contend that SC's notices violated Massachusetts law because the notices did not *explicitly* state that the fair market value of their vehicles would be deducted from the outstanding deficiencies they owed to SC.

Plaintiffs, however, misconstrue the prevailing law. In *Williams v. American Honda Finance Corp.*, 479 Mass. 656 (2018), the basis upon which Plaintiffs bring this action, the Supreme Judicial Court of Massachusetts answered certified questions from the First Circuit concerning, *inter alia*, whether a pre-sale notice relying *entirely* upon the UCC safe-harbor

language was sufficient in light of the fair market value deficiency calculation requirement of RISA § 20B. The SJC concluded that: (1) pursuant to RISA § 20B, a consumer's liability for a deficiency must be calculated in terms of the fair market value of the vehicle, and (2) therefore, the pre-sale notice required by UCC § 9-614 is insufficient as a matter of law unless it accurately describes the deficiency according to RISA § 20B. 479 Mass. at 668-669.

Contrary to the Plaintiffs' contention, Massachusetts law does not require a pre-sale notice to include the phrase "fair market value."  In *Williams*, the SJC offered language that can only be construed as exemplary that would bring a pre-sale notice that relies ***exclusively*** on the UCC safe-harbor language into compliance with RISA.  Further, if the SJC had required a notice to expressly include the term "fair market value" in it, that court would have both run afoul of the UCC's mandate that no particular language is required in a pre-sale notice and exceeded its authority to answer only questions of law certified to it.

Notably, unlike the notice at issue in *Williams*, SC's pre-sale notices did not rely exclusively on the UCC safe-harbor form.  Instead, as stated above, the notices incorporated by reference the deficiency calculation of RISA § 20B.  Thus it is speculative on Plaintiffs part to conclude that the SJC would have found SC's notice non-compliant with the UCC.  Nevertheless, by incorporating RISA § 20B in its notices, SC satisfies *Williams*, by informing consumer-debtors, like the Plaintiffs here, that their unpaid balances would be credited by the fair market values of their vehicles upon their sale.

Accordingly, this Court should dismiss Count I of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.[1]

---

[1] This motion seeks dismissal of the named Plaintiffs' claims in Count I and therefore addresses their claims only. SC expressly reserves all rights, defenses, arguments and the like that it has against putative class members.

## STATEMENT OF PERTINENT FACTS[2]

1.      On or about July 11, 2017, Ms. Piazza purchased a 2015 Toyota Sienna from a dealership on credit and executed a retail installment sale contract (the "Piazza RISC") in connection with the purchase. ECF No. 1-1 (Compl. ¶ 8). A copy of the Piazza RISC is attached hereto as **Exhibit 1**.[3] The dealership assigned the Piazza RISC to SC on July 11, 2017. Ex. 1 at p. 1 (bottom).

2.      On or about July 7, 2018, Mr. Borden purchased a 2018 Hyundai Elantra from a dealership on credit and executed a RISC (the "Borden RISC") in connection with the purchase. ECF No. 1-1 (Compl. ¶ 25). A copy of the Borden RISC is attached hereto as **Exhibit 2**. The dealership assigned the Borden RISC to SC on July 7, 2018. Ex. 2 at p. 1 (bottom).

3.      On or about July 8, 2018, Mr. Yunker purchased a 2018 Dodge Durango from a dealership on credit and executed a RISC (the "Yunker RISC") in connection with the purchase. ECF No. 1-1 (Compl. ¶ 31). A copy of the Yunker RISC is attached hereto as **Exhibit 3**. The dealership assigned the Yunker RISC to SC on July 8, 2018. Ex. 3 at p. 1 (bottom).

4.      Pursuant to the terms of the RISCs, an event of default, such as the failure to make a monthly payment to SC, entitled SC to repossess and sell the vehicles, thereby reducing the outstanding indebtedness to SC. Exs. 1-3 at p. 2, § 2(d) & (f).

5.      SC repossessed Plaintiffs' vehicles. ECF No. 1-1 (Compl. ¶¶ 13, 23; 29-30; 35-36).

---

[2] For purposes of this motion only, SC accepts as true all non-conclusory factual allegations contained in the Complaint.

[3] The Court may consider documents referred to in the Complaint when deciding a motion to dismiss. *Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 205 (D. Mass. 2017).

6.　　　SC sent each of the Plaintiffs a letter stating its intent to sell the repossessed vehicle (the "pre-sale notices"). *Id*. (Exhibit A).

7.　　　The pre-sale notices follow the "safe-harbor" language set forth in Article 9 of the UCC governing consumer sale notices for repossessed collateral.  In addition, the notices contain language incorporating the RISA by reference.  SC's notices (each worded the same) describe the effect of the sale on Plaintiffs' indebtedness under their RISCs as follows:

> We will sell the Vehicle at a private sale sometime after [date] . . . The money that we get from the sale (after paying our costs) will reduce the amount you owe. If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, *subject to applicable law (including Mass. Gen. Laws. ch. 255B § 20B)*

*Id*. at pp. 1, 3 and 5 (emphasis added).[4]  The notices also describe Plaintiffs' right to redeem their vehicles by paying off the debt before the sale. *Id*.

8.　　　On June 13, 2019, Plaintiffs filed a purported class action in Massachusetts Superior Court for Middlesex County. ECF No. 1-1.  On behalf of a class of similarly situated Massachusetts consumers who received a substantially similar notices, Plaintiffs alleged in Count I of the Complaint that the pre-sale notices violated Article 9 of the UCC by incorrectly describing Plaintiffs' potential liability for a deficiency. *Id*. at ¶¶ 42-43, 57.  Plaintiffs seek statutory damages pursuant to UCC § 625(c)(2) on a class-wide basis. *Id*. ¶ 58, Prayer for Relief 3. Plaintiffs also request that the Court bar SC from collecting class member deficiency balances due to its alleged violations of Massachusetts law. *Id.*, Prayer for Relief 4.[5]

---

[4] In deciding this motion, the Court may consider the pre-sale notices because Plaintiffs attach them as an exhibit to the Complaint and they are incorporated by reference therein. *Godinez*, 272 F. Supp.3d at 205.

[5] Ms. Piazza also brings an individual claim against SC and JMAC under the UCC for allegedly breaching the peace during the course of the repossession of her vehicle. *Id*. at ¶¶ 59-62 (Count II). Ms. Piazza seeks actual as well as statutory damages pursuant to UCC § 625(c)(2). *Id*. ¶ 62, Prayer for Relief 5. This motion seeks the dismissal of Count I only.

9. On August 6, 2019, SC timely removed the action to this Court. ECF No. 1.

10. Plaintiffs' Complaint omits details about the circumstances prompting SC's repossession of Plaintiffs' respective vehicles, the conduct of each sale, and the extent to which Plaintiffs' indebtedness was reduced by each sale. *Id*.

11. For instance, Plaintiffs do not dispute they were in default on their respective payment obligations. *Id*.

12. And Plaintiffs do not dispute that, in light of such default, repossession in each case was appropriate. *Id*.

13. Furthermore, Plaintiffs do not say to what extent SC credited their accounts as a result of the sale of their vehicles, nor do Plaintiffs say whether SC sought deficiency judgments against them. *Id*.

14. Instead, Count I of the Complaint focuses exclusively on the wording of the pre-sale notices that SC sent to each Plaintiff. *Id*.

15. With respect to the notice issue, the allegations are sparse. Plaintiffs do not, for example, allege that they read the pre-sale notices before the sale of their vehicles. *Id*.

16. Likewise, Plaintiffs do not allege that they relied on the notice they each received. *Id*.

17. Plaintiffs do not allege how they would have acted differently had the notice been worded differently. *Id*.

18. And Plaintiffs do not state that their accounts were credited less than the fair market value of their respective vehicles. *Id*.

19. In short, this case hinges on the wording of notice letters: (1) that Plaintiffs never claim they read or relied on, and (2) concerning sales whose justification, and ultimate outcome, Plaintiffs do not dispute. *Id*.

## ARGUMENT

I. **Standard of Review.**

In a 12(b)(6) motion, the Court "must analyze whether the complaint contains sufficient factual matter to state a claim that is plausible on its face." *Lyman v. Baker*, 352 F. Supp. 3d 81, 85 (D. Mass. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

In reviewing the facts, the Court must accept as true all non-conclusory factual allegations and reasonable inferences therefrom. *Holloman v. Clarke*, 236 F. Supp. 3d 493, 496 (D. Mass. 2017). In addition, the Court may consider documents attached to the complaint, documents whose authenticity is not in dispute, documents that are central to the Plaintiffs' claims, and documents referred to in the Complaint. *Godinez*, 272 F. Supp. 3d at 205.

Cases that hinge on statutory-interpretation issues, like this one, are well-suited for disposition on a motion to dismiss. *Massachusetts Inst. of Tech. v. Research, Dev. & Tech. Employees Union*, 980 F. Supp. 2d 8, 13 (D. Mass. 2013) ("[Q]uestions of statutory interpretation are questions of law ripe for resolution at the pleadings stage.") (quoting *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009)).

II. **This Court should Dismiss Count I Of The Complaint Because SC's Pre-Sale Notices Satisfy Massachusetts Law.**

    A. **The pre-sales notices comply with the UCC and RISA.**

The central issue presented in Count I of the Complaint is whether SC's pre-sale notices to Plaintiffs violated Massachusetts law.

In Massachusetts, two statutes govern the sale of repossessed motor vehicles: RISA and the UCC.  RISA gives secured creditors the substantive rights to repossess and sell consumer motor vehicles.  In particular, § 20B(a) authorizes secured creditors to repossess motor vehicles where a consumer has materially defaulted on her payment obligations or has substantially impaired the collateral's value.  Section 20B(d) authorizes secured creditors to sell the repossessed vehicle after a redemption period.  And § 20B(e) authorizes creditors to sue the debtor for a "deficiency," which it defines as the amount "resulting from deducting the fair market value of the collateral from the unpaid balance due."  M.G.L. c. 255B, § 20B(e).  The deficiency also includes reasonable repossession and storage costs.  *Id*.

Although it confers substantive repossession rights, RISA does not prescribe the procedures for selling the repossessed vehicle.  There are, for example, no provisions in RISA governing whether, when, or how a secured creditor must inform the defaulting consumer of his or her rights with respect to a repossessed vehicle.  Instead, RISA borrows those procedures from Article 9 of the UCC – unless, that is, those procedures are otherwise "displaced by the provisions of" RISA. M.G.L. c. 255B, § 20B(d) (citing Part 6 of Article 9 of the UCC, §§ 9-601 to 9-624).

UCC § 9-614 specifies the content and form of the notices that secured creditors must send debtors before selling collateral.[6]  Although UCC § 9-614(2) explicitly states that "a particular phrasing of the notification is not required," the UCC provides a sample form that, if used,

---

[6] "The purpose of notice is [(1)] to give the debtor an opportunity either to discharge the debt and redeem the collateral, [(2)] to produce another purchaser or [(3)] to see that the sale is conducted in a commercially reasonable manner." *Buran Equipment Co. v. H. & C. Investment Co.*, 142 Cal. App. 3d 338 (1st Dist. 1983); *Wilmington Tr. Co. v. Conner*, 415 A.2d 773, 776 (Del. 1980) (same). "Cases involving notice issues should be resolved with these three purposes in mind." 4 White, Summers, & Hillman, Uniform Commercial Code § 34:30 (6th ed.).  *See also First Nat'l Bank v. Erb Equip. Co.*, 921 S.W.2d 57, 62 (Mo. App. E.D. 1996) ("The UCC provides the guidelines by which commercial activity occurs and the code is applied continually by non-lawyers in commercial activities. The UCC should be interpreted with that underlying practical fact in mind.").

"provides sufficient information" to the consumer. UCC § 9-614(3). This "safe-harbor"[7] form includes a description of how the proceeds of the sale will operate to reduce the debtor's outstanding indebtedness.

But unlike RISA § 20B(e), which says that the outstanding indebtedness will be reduced by the vehicle's "fair market value," UCC § 9-614(3)'s safe-harbor form states that the indebtedness will be reduced by "[t]he money we get from the sale." UCC § 9-614(3). Nevertheless, UCC § 9-614(3) reassures secured creditors that using the safe-harbor form set forth therein adequately notifies consumers of upcoming sales of repossessed collateral. ("The following form of notification, when completed, provides sufficient information").

In this case, SC's pre-sale notices sent to Plaintiff, and at issue here followed the safe-harbor form contained in UCC § 9-614. For example, each notice informs Plaintiffs of SC's intent to sell their respective vehicles at a private sale, gives the date after which the sale will occur, and notifies Plaintiffs that they may owe a deficiency following the sale of their vehicles. *See* ECF No. 1-1 (Compl., Ex. A); *see* UCC § 9-614(3).

In addition to the UCC safe-harbor form, the pre-sale notices also include an explicit reference to RISA § 20B: "[t]he money that we get from the sale (after paying our costs) will reduce the amount you owe... you may owe us the difference, **subject to applicable law (including Mass. Gen. Laws ch. 255B § 20B).**" ECF 1-1 (Compl., Ex. A) (emphasis added.). By including that language in the notice, SC informs Plaintiffs that SC is required to adjust its calculation of the amount Plaintiffs owe following the sale of their vehicles to account for the fair market value of the vehicle.

---

[7] "Safe harbor" is the common parlance used in the UCC. *See* UCC 9-614, Official Comment 3.

Thus, SC's pre-sale notices to Plaintiffs accurately, indeed explicitly reflect the above-described interplay between the UCC and RISA and provide sufficient information to them regarding the deficiency calculation.

### B. The pre-sale notices satisfy the *Williams* opinion to the extent it applies here.

Plaintiffs complain that SC's pre-sale notice did not explicitly state that "the fair market value of the vehicle, not the sale price, will be deducted from the amount" they owe SC. ECF 1-1 (Compl. at ¶ 39). But Massachusetts law does not require such explicit language in pre-sale notices. UCC § 9-614(2) ("A particular phrasing of the notification is not required."). Instead, a creditor's pre-sale notice need only reasonably inform a consumer of the correct deficiency calculation under RISA. *Id.* § 9-611(b) ("a secured party that disposes of collateral under Section 9-610 shall send . . . a reasonable authenticated notification of disposition."); *id.* § 9-611 UCC Comment 2 (notice must be reasonable as to, *inter alia*, "its content.") (citing UCC § 9-614). SC's pre-sale notices did that.

For years, a reasonable creditor could conclude that it was safe to exclusively rely on the UCC's safe-harbor form for pre-sales notices, which is intended to accomplish the UCC's goal "to simplify, clarify and modernize the law governing commercial transactions . . . and make uniform the law among the various jurisdiction." M.G.L. c. 106, § 1-103(a)(1)&(3). Indeed, no authority said otherwise until the SJC's *Williams* opinion on June 5, 2018. In *Williams*, the SJC answered certified questions from the First Circuit concerning, *inter alia*, the correct interpretation of the interplay between the UCC pre-sale notice provisions and the RISA, as described above.

The defendant in *Williams*—a secured creditor—repossessed the plaintiff's automobile and then sent her a pre-sale notice. The notice sent by the defendant in *Williams* exclusively followed the safe-harbor language in § 9-614(3), stating that:

10

> The money received from the sale (after paying our costs) will reduce the amount you owe. If the auction proceeds are less than what you owe, you will still owe us the difference. If we receive more money than you owe, you will receive a refund, unless we must pay it to someone else.

479 Mass. at 658-59. The defendant's notice in *Williams* did not refer to RISA or otherwise incorporate the fair market value concept set forth in RISA § 20B(e). *Id.*

The defendant removed the case to this Court and moved for summary judgment. Magistrate Judge Boal recommended that the motion be granted because the defendant had complied with UCC § 9-614(3)'s safe harbor provision. *Williams v. American Honda Finance Corp.*, No. 1:14-CV-12859, 2016 WL 11507789, at *8 (D. Mass. Feb. 11, 2016). This Court accepted the magistrate judge's recommendation and entered judgment for the defendant. *Id.* at *1.

On appeal, the First Circuit concluded that the UCC and RISA were at odds with each other. *Williams v. Am. Honda Fin. Corp.*, 858 F.3d 700, 703 (1st Cir. 2017), *certified question answered*, 479 Mass. 656 (2018). UCC § 9-614(3)'s safe-harbor governs the <u>form</u> of pre-sale notice while RISA governs how to <u>calculate</u> a deficiency. Yet the safe-harbor provision recites that the borrower's debt would be credited by the proceeds from the sale while RISA states that a consumer's debt should be credited by the "fair market value" of the vehicle. Thus, RISA incorporates a safe-harbor provision that, paradoxically, does not describe how the RISA computes deficiencies. The First Circuit certified the matter to the SJC to help it "reconcile the provision of a safe-harbor form of notice under UCC section 9-614 with MVRISA's mandate concerning the credit due upon sale." *Williams*, 858 F.3d at 703, *certified question answered*, 479 Mass. 656 (2018).

The pertinent certified question posed to the SJC in *Williams* asked "[w]hether, and in what circumstances, a pre-sale notice is 'sufficient' under [UCC § 9-614] . . . where the notice does not

describe the consumer's deficiency liability as the difference between what the consumer owes and the 'fair market value' of the collateral . . . ." 479 Mass. at 668.

Following certification, the SJC found, as a matter of first impression, that in "transactions governed by M.G.L. c. 255B, a debtor's deficiency liability must be calculated as the difference between the debtor's unpaid balance and the fair market value of the repossessed collateral." *Williams*, 479 Mass. at 669. Therefore, the Court concluded, the "notice that is required by the [UCC] will only be considered sufficient if it accurately describes the deficiency under G.L. c. 255B, § 20B." *Id*.

In further answering the First Circuit's certified question pertaining to Honda's pre-sale notice, the SJC provided sample language modifying the UCC safe-harbor form that would bring the notice sent by Honda to Williams into compliance with RISA. *See Williams*, 479 Mass. at 669. ("The fair market value of your vehicle will be used to reduce the amount you owe . . . "). But the SJC did not declare that using the term "fair market value" in a notice is required or is the only way to satisfy the requirements of the UCC as modified by RISA. *Id*. ("[N]otice should include language ***similar to*** the following statement . . . .") (emphasis added). To read *Williams* as obligating creditors to adopt such language in pre-sale notices would override UCC § 9-614's mandate that no particular language is required. UCC § 9-614(2).

Moreover, the SJC could not have meant to *require* use of particular, new language it offered to displace the safe harbor form in UCC § 9-614(3), because to do so would have exceeded the SJC's authority under the Uniform Certification of Questions of Law Act, as adopted in Massachusetts (the "Act"), S.J.C. Rule 1:03. Under the Act, the SJC has the power to answer questions of law certified to it by federal courts where, *inter alia*, "it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]." *Id.* at § 1. But Rule 1:03 does not

give the SJC authority to rewrite statutes, which is beyond the court's function in any event. *Com. v. Biagiotti*, 451 Mass. 599, 602–03 (2008) ("It is not [the SJC's] function to rewrite a statute.") (internal citations omitted). Rather, the SJC's function in interpreting any statute that is the subject of certified questions "is to ascertain 'the intent of the Legislature, as evidenced by the language used . . . .'" *Redgrave v. Bos. Symphony Orchestra, Inc.*, 399 Mass. 93, 98 (1987) (quoting *Glasser v. Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984)).

Further, certified questions are answered "in accordance with their clear and unequivocal wording." *Id.* at 97.  Under the Act, courts deciding a certified question "may go no further than the question certified.  In other words, the answering court will restrain from answering a question broader than that certified."  69 A.L.R.6th 415 (2011); *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 131 (2003) (scope of review under the Act is limited to the issue raised by the certified question); *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 417 Md. 386, 389 n. 1 (2010) (pursuant to the Act, the Court of Appeals "may go no further than the question certified").

Viewed in this context, the SJC, after explaining that a pre-sale notice "must describe the deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance", offered exemplary notice language that would bring creditors relying ***exclusively*** on the safe-harbor language into compliance with Massachusetts law.  479 Mass. at 669.[8]  Honda's notice in *Williams* stated the plaintiff's indebtedness would be reduced, with no qualification, by "[t]he money [the defendant received] from the sale." UCC § 9-614(3).  Absent from Honda's notice was any reference to the RISA, specifically § 20B and its requirement that plaintiff be credited the fair market value of the vehicle when calculating the deficiency.  Thus,

---

[8] The First Circuit adopted the SJC's opinion with respect to pre-sale notices.  *Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83, 87 (1st Cir. 2018).  Like the SJC, the First Circuit did not mandate that the term "fair market value" be expressly included in the deficiency calculation description.

the *Williams* plaintiff had no way of knowing from the notice that the provisions of § 20B applied to her, and that her deficiency may be adjusted following the sale of the vehicle depending on value received.

But in contrast to Honda's notice in *Williams*, here the pre-sale notices sent by SC explicitly referenced and incorporated RISA § 20B.  ECF No. 1-1 (Compl., Ex. A).  Thus, SC's notice adequately informed Plaintiffs that their liability for a deficiency would *not necessarily* be the difference between the contract balance and the amount SC received from the sale, but could be more or less as provided by § 20B.  Indeed, SC therein acknowledged it was "subject to" RISA § 20B, and therefore bound to credit Plaintiffs for the fair market value of their respective vehicles in calculating their deficiencies. As a result, SC's pre-sale notices both bind SC to calculate Plaintiffs' deficiencies based on the fair market value of the collateral, and accurately describe a sale process by which fair market value is obtained. *Williams*, 479 Mass. at 668.

While SC's pre-sale notices did not contain the exact sample language offered by the SJC in *Williams*, the SJC did not – and could not – preclude a creditor from incorporating the provisions of RISA § 20B by reference in its pre-sale notices as a compliance alternative.  Indeed, it is well-settled that incorporation by reference has the same effect as if the language of the statute itself was written into the notice. *See, e.g.*, *Greene v. Ablon*, 794 F.3d 133, 145 (1st Cir. 2015) ("Unless incorporation by general reference is explicitly rejected by some statute or regulation, incorporation by a clearly stated general reference will suffice.") (quoting *Chicopee Concrete Serv., Inc. v. Hart Eng'g Co.,* 398 Mass. 476 (1986)); *James B. Nutter & Co. v. Cassidy*, 2016 WL 4091145, at *5 (Mass. Land Ct. Aug. 1, 2016) (holding it is well-settled that mortgages may incorporate the statutory power of sale by reference where, *inter alia*, the mortgage refers to "other remedies permitted by applicable law"); *Empacadora Puertorriquena De Carnes, Inc. v.*

*Alterman Transp. Line, Inc.*, 303 F. Supp. 474, 478 (D.P.R. 1969) (Where a statute is incorporated by reference its provisions are "terms of the contract . . . and the court has the duty to construe the contract to give consistent effect, if possible, to all of its terms."); *Nelson v. City of Omaha*, 256 Neb. 303, 311 (1999) (where a statute adopts all or a part of another statute by reference, the effect is the same as if the statute or part thereof had been written into the adopting statute); 2B Sutherland Statutory Construction § 51:7 (7th ed.) ("a statute may refer to another act and incorporate part or all of it by reference.").

This is especially true where a core theme of the UCC is that the law does not dictate exact language and the notification need only be "reasonable." *See, e.g.,* UCC § 9-614(2) ("A particular phrasing of the notification is not required."); *id.* 9-611(b); *id.* § 9-611 UCC Comment 2 ("**Reasonable Notification.** This section requires a secured party who wishes to dispose of collateral under Section 9-610 to send "a reasonable authenticated notification of disposition" to specified interested persons, subject to certain exceptions. The notification must be **reasonable** as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content.") (citing Sections 9-612 (timeliness of notification), 9-613 (contents of notification generally), 9-614 (contents of notification in consumer-goods transactions)) (second emphasis added). *See also First Nat'l Bank*, 921 S.W.2d at 62.

In any event, describing the deficiency as the difference between the money SC receives from the sale and the outstanding balance, subject to RISA § 20B, as SC did in its pre-sale notices accurately describes how the deficiency is calculated because, as the SJC acknowledges, the automobile repossession market is a reliable indicator of fair market value. *Williams*, 479 Mass. at 664-666 ("As evidenced by an extensive study of the automobile repossession market by the Federal Trade Commission . . . creditors have an incentive to obtain the highest possible price for

collateral that they repossess."). In other words, SC complied with the UCC and RISA per *Williams* where its pre-sale notices described a private sale in which fair market value would be obtained and further acknowledged its responsibility to credit the consumer for the fair market value of the vehicle following said sale.

Accordingly, Count I should be dismissed.

## CONCLUSION

For the foregoing reasons, SC respectfully requests that the Court grant its Motion to Dismiss, and dismiss Count I of the Complaint with prejudice.

Dated:  August 13, 2019,

Respectfully submitted,

SANTANDER CONSUMER USA INC.
By its attorneys,

/s/ Michael T. Grant
Michael T. Grant (BBO No. 677893)
Charles A. Ognibene (BBO No. 300774)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: +1 857 488 4200
Fax: +1 857 488 4201
MTGrant@duanemorris.com
CAOgnibene@duanemorris.com

Robert J. Brener (*pro hac* motion to be filed)

DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, NJ 07102-5429
Telephone: +1 973 424 2000
Fax: +1 973 424 2001
RJBrener@duanemorris.com

**CERTIFICATE OF SERVICE**

I, Michael T. Grant, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 13, 2019. I further certify that on this 13th day of August a copy of the foregoing was served, via U.S. mail, postage prepaid, on the following:

JMAC Distribution, LLC
131 Crawford Street
Fitchburg, MA 01420

/s/ Michael T. Grant