UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LISA PIAZZA, JOSEPH BORDEN, and RICHARD YUNKER, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 1:19-CV-11697-ADB |
| SANTANDER CONSUMER USA INC., and JMAC DISTRIBUTION LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I OF PLAINTIFFS' COMPLAINT**

The Massachusetts Uniform Commercial Code, M.G.L. c. 106, § 9-601, *et seq*. ("UCC"), and Massachusetts Retail Instalment Sales of Motor Vehicles Act, M.G.L. c. 255B, § 1, *et seq*. ("RISA") work together to permit a creditor to use "self-help" repossession to seize a motor vehicle pledged as collateral after a qualifying loan default. After a repossession, both these laws continue to work in concert to permit a creditor to sell the vehicle, provided that the creditor gives the debtor timely notice of when and how that sale will occur and informs the debtor of certain key rights and facts; among these are the debtor's affirmative right to an accounting of the unpaid indebtedness, the right to redeem the vehicle before the creditor sells it, that the debtor may (or may not) be liable for a deficiency under the loan contract after the sale, and the basis upon which that deficiency will be calculated.

The latter goes to the heart of this case, and was best explained recently by the Supreme Judicial Court in Williams v. American Honda Finance Corp., 479 Mass. 656 (2018), in which the SJC surveyed the Massachusetts law on this topic – in the context of answering certain questions certified by the First Circuit – and held that the UCC and RISA require creditors to

1

inform debtors that the fair market value of their vehicles – and not just the proceeds of sale – will be credited to their loans and used for the purposes of calculating their deficiencies. The bulk of Williams is devoted to resolving a dispute over what constitutes fair market value in the motor vehicle repossession context – not relevant here – but the SJC dispatches the notice issue before this Court briefly and succinctly in just two pages of its decision. Id. at 667-9. The SJC's brief and straightforward approach was appropriate under the circumstances because the SJC only needed to read the UCC and RISA together (which contain an explicit cross-reference) and apply the plain text of those two statutes to explain what was and what was not a lawful pre-sale notice.

The SJC explained that Massachusetts law requires that all pre-sale notices "accurately describe" that a debtor's deficiency will be calculated based on the fair market value of his or her vehicle – and not just what the creditor gets from a sale – and if a pre-sale notice fails to do that, it can "never" be legally sufficient under the UCC. Id. at 668. The SJC summarized the law in this manner: "In pre-sale notices and post-sale deficiency explanations, creditors must describe and calculate the debtor's deficiency as based on 'the fair market value' of the vehicle." Id. at 669.

There is no dispute that Defendant Santander Consumer USA, Inc. ("Santander") sent the Plaintiffs and other putative class members pre-sale notices that failed to state that Santander would calculate their deficiencies based on the fair market value of their vehicles, and informed debtors that they would be credited with the sale proceeds. Specifically, Santander informed the Plaintiffs and other putative class members that "The money we get from the sale (after paying our costs) will reduce the amount you owe. If the net proceeds at the sale, after expenses, does not equal your unpaid balance, […], you may owe us the difference, subject to applicable law

(including Mass. Gen. Laws. ch. 255B § 20B.)" See Dkt. 1 - Complaint, Exhibit A (the "Pre-Sale Notice").

Santander now argues that its Pre-Sale Notices were legally sufficient because, although they explicitly inform debtors that their deficiencies will be calculated based on the proceeds of sale after expenses, the reference to M.G.L. c. 255B, § 20B reasonably and sufficiently informs debtors of their right to a fair-market-value credit because they may consult the statutory text to learn of their rights (despite Santander having contradicted that statutory text with the same sentence). To buttress this position, Santander further argues, somewhat remarkably, that reading and construing the UCC and RISA together somehow re-writes the statute and "[exceeds] the SJC's authority," and that, therefore, the Williams decision, despite having applied to the Williams defendant, American Honda Finance Corp., cannot apply here. See Dkt. 4 at 12-13. Santander is wrong.

First, Santander's Pre-Sale Notice, which merely mentions the existence of M.G.L. c. 255B § 20B, does not provide a sufficient description of a debtor's deficiency liability as required by Massachusetts law. The SJC stated clearly that lenders must "describe the deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance" and "that the notice required by the Uniform Commercial Code will only be considered sufficient if it accurately describes the deficiency under G. L. c. 255B, § 20B." Williams, at 669. Santander's passing reference to Section 20B's potential application is no substitute, especially given Santander's explicit contradiction of the *content* of Section 20B within the same sentence.

Second, Santander's challenge to the SJC's authority is extraordinary and misplaced. The interpretation of questions of Massachusetts law certified to it by the First Circuit is well

within the SJC's power to decide, and it is well-settled that the SJC's decisions on issues of Massachusetts state law are binding on federal courts. Santander only seeks to rewrite these rudimentary legal precepts because Williams makes clear that Santander's Pre-Sale Notice violates Massachusetts law.

For these reasons, this Court should deny Santander's Motion To Dismiss Count I of Plaintiffs' Complaint in its entirety.

## RELEVANT BACKGROUND

On or around July 11, 2017, Ms. Piazza entered into a loan agreement with Santander for the purchase of a 2015 Toyota Sienna automobile. See Dkt. 1 - Complaint ("Compl.") at ¶ 8; Dkt. 4 at 7. On or about January 7, 2019, a repossession agent repossessed Ms. Piazza's vehicle. Compl. at ¶¶ 15-23. On or around July 7, 2017, Mr. Borden entered into a loan agreement with Santander for the purchase of a 2018 Hyundai Elantra. Compl. at ¶ 25. Upon an alleged default, Santander repossessed Mr. Borden's vehicle on or about January 14, 2019. Compl. at ¶¶ 29-30. In July 2018, Mr. Yunker used a loan from Santander to purchase a 2018 Dodge Durango. Compl. at ¶ 31. On or about December 17, 2018, Santander repossessed Mr. Yunker's vehicle. ¶ 36.

Following the repossession of the three plaintiffs' vehicles, Santander sent each of the Plaintiffs a standard-form notice advising them of the intent to resell their vehicles. See Compl., Exhibit A – Pre-Sale Notice. These notices each state in part:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws. Ch. 255B § 20B).

Id. Plaintiffs commenced this action in Middlesex County Superior Court, challenging Santander's notices as insufficient as a matter of law. See generally Compl. Santander then

removed the case to this Court and moved to dismiss on the basis that the notices were legally sufficient. See Dkt. 4.[1]

## STANDARD OF REVIEW

Fed. R. Civ. P. 8(a) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss should be denied if a plaintiff has shown a "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [a cause of action]." Id. at 556.

## ARGUMENT

### A. A Post-Repossession Notice Must Describe A Consumer's Potential Liability For A Deficiency As The Difference Between Her Loan Balance And The Fair Market Value Of Her Vehicle.

The UCC "generally govern[s] defaults in secured transactions." Williams at 668. Under the UCC, after a repossession but before the sale of the collateral, a creditor must provide a written notice containing a "description of any liability for a deficiency of the person to which the notification is sent." UCC § 9-614(1). The UCC calculates a deficiency using the proceeds of a "commercially reasonable" sale. See UCC § 9-615. Section 9-614 of the UCC states the following text "provides sufficient information […]:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you (*will or will not, as applicable*) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else. UCC § 9-614(3).

---

[1] Plaintiff Piazza also asserted an additional individual claim against Santander for breach of peace during the course of the repossession of her vehicle in violation of M.G.L. c. 106 § 9-609. See Compl. at ¶¶ 59-61. However, Santander moved to dismiss only the Plaintiffs' collective claim arising from Santander's unlawful notice, and not Ms. Piazza's individual breach-of-peace claim.

But, while the UCC applies to *all* collateral,[2] it cannot be read in a vacuum.  The Massachusetts RISA, M.G.L. c. 255B, § 1 *et seq.*, applies to retail credit sales of motor vehicles and explicitly displaces any contradictory provisions in the UCC:  "[u]nless displaced by the provisions of this section [RISA § 20B] and section twenty A [RISA § 20A] the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106 [UCC]."  RISA § 20B(d).  In turn, RISA § 20B(e)(1) provides:

> "[i]f the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section."

Massachusetts law makes clear that a motor vehicle lender may not choose to follow only one of the two key laws governing secured transactions of motor vehicles in Massachusetts: RISA § 20B explicitly states that its provisions (and those of RISA § 20A) displace the UCC to the extent that it imposes different obligations in the context of motor vehicle credit sales and repossessions.  And given that the two statutes calculate post-repossession deficiencies differently (the RISA using fair market value and the UCC using sales proceeds from a commercially reasonable sale), the RISA displaces the UCC's method of calculation with respect to motor vehicles.  Therefore, a notice sent under UCC § 9-614 must inform the debtor that any loan deficiency will be calculated based on the fair market value of the vehicle and not the proceeds from the sale of the vehicle.

In <u>Williams</u>, the SJC recognized that the UCC applies to secured transactions involving motor vehicles "unless displaced by the provisions of [§ 20B] and [§ 20A]" of the RISA.

---

[2] The statute applies to any "property subject to a security interest or agricultural lien," including accounts, chattel paper, proceeds, payment intangibles, promissory notes, and consigned goods.  UCC, § 9-102.

Applying the clear statutory text, the SJC unequivocally stated that the UCC's notice "is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." Williams, 479 Mass. at 668. In order to be legally sufficient, the SJC instructed that "[t]he ***notice…must describe the deficiency*** as the difference between the fair market value of the collateral and the debtor's outstanding balance because this is what is required by § 20B." Id. (emphasis added).

Here, the Pre-Sale Notices were plainly deficient due to Santander's failure to describe that the recipients would receive a fair market value credit if they did not redeem their repossessed vehicles after Santander sold them. See Compl., Exhibit A. This is valuable information for a debtor attempting to decide, within a small and shrinking window of time, whether to redeem their vehicle or let it go. It is reasonable to infer that debtors with the ability to consult third-party sources about the fair value of their vehicles may act differently – and perhaps more calmly and rationally – with the knowledge that if they do not or cannot pay off their loans within 20 days after the repossession in order to redeem from Santander (see RISA § 20B(c)), they will be credited the fair market value of their vehicles and not just what Santander may receive for those vehicles at a sale.

Remarkably, despite admitting the failure of the Pre-Sale Notices to adequately describe the deficiency (see Dkt. 4 at 14), Santander nevertheless claims that the notices are sufficient because they incorporate "the provisions of RISA § 20B by reference". Dkt. 4 at 14. To support this argument, Santander cites to UCC § 9-614(2)'s mandate that no particular phrasing is required for an adequate notice, and that the exact term "fair market value" is therefore not necessary. See Dkt. 4 at 12. Santander is correct that neither RISA § 20B nor Williams require

7

any magic words – however Plaintiffs never alleged that they did. Instead, in an effort to avoid liability, Santander misreads both the holding of Williams and the Plaintiffs' cause of action.

The SJC did not interpret RISA § 20B and the UCC to require specific *wording* but rather to require a specific *message*: that is, to sufficiently and reasonably *describe* the deficiency to debtors as the difference between the fair market value and the debtor's outstanding balance. This is what the plain text of the UCC requires. UCC, § 9-614(1)(lender must provide "[a] description of any liability for a deficiency…").[3] And the SJC stated no less than five times in Williams that adequate notice must include an express *description* of how the deficiency is calculated.[4] In contrast, nowhere in the decision does the SJC come anywhere close to suggesting that the UCC's notice requirement may be satisfied by saying the opposite of what the law requires in the motor-vehicle context and then simply referring to RISA § 20B. Santander's argument that, despite the plethora of clear language requiring a *descriptive* notice, its notices are nevertheless adequate because they include a vague reference that deficiencies are "subject to applicable law (including Mass. Gen. Law ch 255B § 20B)," directly contradicts the plain text of the UCC and holding of Williams and is inconsistent with the consumer protections

---

[3] Even in the absence of the SJC's decision in Williams, Santander's notice would be deficient. A "description" is a "[a] delineation or explanation of something by an account setting forth the subject's characteristics or qualities." DESCRIPTION, Black's Law Dictionary (11th ed. 2019). Thus, under its plain text, the UCC requires that the notice include a "delineation or explanation" of how a deficiency is to be calculated that explains its "characteristics and qualities" – a passing reference to a statute, without more, could never meet this requirement.

[4] See Williams, at 657-658, ("we answer that the pre-sale and post-sale notices provided to the debtor ***must expressly describe the deficiency*** as the difference between the amount owed on the loan and the fair market value of the vehicle"); Id. at 668 ("We conclude that the notice that is required by the Uniform Commercial Code is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the ***notice fails to accurately describe how the deficiency is calculated***"); Id. at 669 ("The notice that is required by G. L. c. 106, § 9–614, and G. L. c. 106, § 9–616, ***must describe the deficiency*** as the difference between the fair market value of the collateral and the debtor's outstanding balance because this is what is required by § 20B"); Id. ("Ultimately, the notice required by the Uniform Commercial Code will only be considered sufficient ***if it accurately describes the deficiency*** under G.L. c. 255B, § 20B"); Id. ("In pre-sale notices and post-sale deficiency explanations, ***creditors must describe and calculate the debtor's deficiency*** as based on the fair market value of the vehicle.") (emphasis supplied for all).

underlying RISA § 20B and the UCC. See Compl., Exhibit A; see also Show-Me Credit Union v. Mosely, 541 S.W.3d 28, 32 (Mo. Ct. App. 2018) (holding that disclosure that the collateral would be sold at a "private or public sale" does not satisfy the UCC's requirement of specifically describing the manner of sale, and that, notwithstanding the fact that no specific phrasing was required, the basic information always is).

As the SJC noted, RISA operates largely as a consumer protection statute. See e.g. Williams, 479 Mass. at 664 (RISA was drafted with the "interest in shielding consumers from unnecessary or unnecessarily inflated deficiency claims"). As one commentator put it, "Sections 9-614 and 9-616 [of the UCC] continue the expansion of consumer-oriented rules in the Code. The thrust of these uniform provisions is to advance the notion of communications to the debtor, which are informative and helpful, as well as consumer friendly, in consumer dispositions." See Herbert Lemelman, Massachusetts Practice Series: Manual on Uniform Commercial Code, 25A Mass. Prac. § 9:234 (ed ed.). The average consumer, unlike Santander's attorneys, would have difficulty deciphering RISA § 20B's seven hundred words, filled with technical legal terms and cross references to other statutes.[5] See e.g. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051,

---

[5] The full text of M.G.L. c. 255B § 20B, as referenced without description or explanation in Santander's notice, reads:

> (a) Subject to the provisions of this section and section 20A a secured creditor under a consumer credit transaction may take possession of collateral. In taking possession the secured creditor under a consumer credit transaction may proceed without a prior hearing only if the default is material and consists of the debtors failure to make one or more payments as required by the agreement or the occurrence of an event which substantially impairs the value of the collateral and only if possession can be obtained without use of force, without breach of peace and unless the debtor consents to an entry, at the time of such entry, without entry on property owned by or rented to the debtor.
> (b) Except as provided in subsection (a) a creditor under a consumer credit transaction may proceed against collateral only after a prior hearing. In any proceeding where possession of the collateral is part of the relief sought by a holder no court shall allow a secured creditor to take possession of collateral until the right of the creditor to take possession has been determined at a hearing at which the buyer has an opportunity to be heard having been notified in writing of said hearing at least seven days in advance thereof.
> (c) The buyer under a secured consumer credit transaction may redeem the collateral from the holder at any time within twenty days of the creditor's taking possession of the collateral, or thereafter until the creditor has either disposed of the collateral, entered into a contract for its disposition, or gained the right to retain the collateral in satisfaction of the buyer's obligation.

1056 (8th Cir. 2002) ("an unsophisticated consumer cannot be expected to know the legal meanings of terms"); <u>Lox v. CDA, Ltd.</u>, 689 F.3d 818, 825 (7th Cir. 2012) (in context of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, noting that, "[w]hile it is true that the unsophisticated consumer has a rudimentary knowledge about the financial world, we do not presume that the same consumer has knowledge of relevant legal precedent") (internal quotations and citations omitted). Likely realizing this, the SJC provided helpful guidance, indicating that "when creditors are providing notice prior to disposing of the collateral under [UCC] § 9-614(3), the notice should include language similar to the following statement:

> The <u>fair market value of your vehicle</u> will be used to reduce the amount you owe, <u>which is your outstanding balance plus the reasonable costs of repossessing and selling the vehicle</u>. If <u>the fair market value of your vehicle is less</u> than you owe, you (will or will not, as applicable) still owe us the difference. If <u>the fair market value of your vehicle is more</u> than you owe, you will get the extra money, unless we must pay it to someone else."

---

(d) The creditor may after gaining possession sell or otherwise dispose of the collateral. Unless displaced by the provisions of this section and section twenty A the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106. Notwithstanding the provisions in Part 6 of Article 9 of chapter 106, if, in connection with a consumer credit transaction which involves an unpaid balance of two thousand dollars or less and which is at the time of default secured by a non-possessory security interest in consumer goods, the creditor takes possession of or accepts surrender of the collateral, the debtor shall not be liable for any deficiency. If the agreement between the creditor and debtor provides that the debtor is to obtain insurance protecting the collateral against fire, theft, collision or other hazards and naming the creditor as loss payee and if, prior to the repossession or surrender of the collateral, loss or damage occurs which would give rise to insurance proceeds under the terms of the policy in force, then nothing in this section shall be deemed to limit the creditor's rights to so much of the insurance proceeds as does not exceed the fair market value of the collateral existing just prior to the loss or damage and, if insurance as required by the agreement is not in force at the time of the loss or damage, nothing in this section shall be deemed to limit the creditor's rights in proceeding against any third party who is responsible for the loss or damage in the name of the debtor or otherwise. For the purposes of this section the unpaid balance of a consumer credit transaction shall be that amount which the debtor would have been required to pay upon prepayment.
(e) (1) If the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section.
(2) In a proceeding for a deficiency the fair market value of the collateral shall be a question for the court to determine. Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral.

Williams, at 669 (emphasis in original).

In contrast, Santander's reference to 255B § 20B reads: "The money that we get from the sale (after paying our costs) will reduce the amount you owe. If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws ch. 255B § 20B)." Compl. Exhibit A.  Rather than describing the correct method used to calculate the deficiency, Santander's Pre-Sale Notice only refers to the "money that [Santander] gets from the sale" and the "net proceeds at the sale, after expenses." Santander's cursory reference to lengthy statutory text of RISA § 20B (reproduced here in Footnote 5, *supra*) in a pre-sale notice that otherwise delivers the clear message that the debtor will be entitled to a credit based on the proceeds of sale is not "similar" enough to the description required by the UCC and RISA so as to be "reasonable as to…its contents" (see Dkt. 4 at 15). Santander impermissibly tasks the consumer with the need to engage in statutory interpretation conflicting with its own statements in order to understand his or her rights, undermining the consumer protections underpinning the RISA and UCC. Santander's Pre-Sale Notice also merely lists RISA § 20B as one of any number of laws that may be applicable to the debtor's deficiency.  See Compl., Exhibit A ("…subject to applicable law (*including* Mass. Gen. Laws. Ch. 255B § 20B)").

This is a far cry from the descriptive statement required by Williams or an explicit incorporation of § 20B(e)(1) – the applicable statute and subsection. Massachusetts law requires explicit language of the parties' intent for the incorporation of extrinsic materials to be valid – not just an ambiguous background statement like Santander's. See NSTAR Elec. Co. v. Dep't of Pub. Utilities, 462 Mass. 381, 394 (2012) ("the language used in a contract to incorporate extrinsic material by reference... must clearly communicate that the purpose of the reference is to

incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history))." Courts routinely reject arguments that such cursory references to statutes or regulations sufficiently incorporate them into contracts. See Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy Fund, 466 Mass. 368, 376 (2013) (corporate bylaws that merely cite to certain relevant provisions of the Securities Exchange Act of 1934 as guidance do not incorporate or adopt the timelines of the NYSE by reference); see also Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988) (a statement that an agreement is "subject to the present regulations of the secured party….is hardly the type of clause that should be read as incorporating fully into the contract all the…regulations").

Here, Santander's vague and unexplained citation to the existence of RISA § 20B (amongst other statutes) informs the debtor only that "applicable law" will play some role in the calculation of the deficiency. This background statement cannot be read to explicitly incorporate the deficiency calculation methods of the statute into Santander's notice (even assuming that such an incorporation could correct Santander's substantive statements regarding the sale-based credit.) See Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 440 (7th Cir. 1994) (a statement that there "may be" warranties from the manufacturer is insufficient as a matter of law under 15 U.S.C. § 1667a(6) – which requires the disclosure to identify the manufacturer's warranties – because it "gives the lessee no information whatsoever. It is not a disclosure at all but an extraneous statement of the obvious--there may be warranties or there may not be.")

Finally, a pre-sale notice must be both reasonable and sufficient. See Williams at 667-8 (question is when "a pre-sale notice is 'sufficient' under [the Uniform Commercial Code, G. L. c. 106, § 9–614 (4) and (5)], and 'reasonable' under [the Uniform Commercial Code, G. L. c.

106, § 9–611 (b)]"). While Santander seeks to conflate these twin requirements, any argument that addresses only "reasonableness" without also addressing "sufficiency" cannot answer the question of whether a pre-sale notice is lawful. Id. at 668 (pre-sale notice "never sufficient" unless it describes the deficiency will be based on fair market value). Even if, as Santander argues, the cross-reference to § 20B is reasonable (see Dkt. 4 at 15), it fails to argue why an unexplained citation to a statute would be a "sufficient" description. For example, on page 10 of its motion, Santander cites to Comment 2 to UCC § 9–611 (see Dkt. 4 at 10) addressing the general requirement that notice be "reasonable[6]," and notes that that Comment cites to UCC § 9–614. However, this argument obfuscates that UCC § 9–614 imposes an additional and separate requirement of "sufficiency" of information in consumer goods transactions in the Pre-Sale Notice. As Comment 2 to UCC § 9–614 explains:

> **Notification in Consumer-Goods Transactions**. Paragraph (1) sets forth the information required for a reasonable notification in a consumer-goods transaction. A notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law. Compare Section 9-613(2), under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section.

Liability in this case flows from that Paragraph 1, specifically UCC § 9–614(1)(B). Santander cannot defend by claiming that its Pre-Sale Notice was generally reasonable. As the SJC made clear in Williams, a Pre-Sale Notice is only "sufficient" under UCC § 9–614 when it describes that future deficiency will be based on the fair market value of the vehicle.

---

[6] "Reasonable Notification. This section requires a secured party who wishes to dispose of collateral under Section 9-610 to send "a reasonable authenticated notification of disposition" to specified interested persons, subject to certain exceptions. The notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content. See Sections 9-612 (timeliness of notification), 9-613 (contents of notification generally), 9-614 (contents of notification in consumer-goods transactions)." UCC § 9–611, Comment 2.

In sum, this Court should deny Santander's attempt to avoid compliance with Massachusetts law.

### B. Williams Was Well Within Supreme Judicial Court's Authority, And Its Holding Applies To This Case.

Santander appears to suggest that the SJC exceeded its authority in Williams by rewriting the statute and issuing a decision that exceeded the certified questions, and so that Williams should not apply here. See Dkt. 4 at 12-14. Santander is incorrect. First, Santander is drastically narrowing the scope of the questions certified by the First Circuit to the SJC. Specifically, the First Circuit's second certified question asked:

> Whether, ***and in what circumstances***, a pre-sale notice is "sufficient" under UCC section 9-614(4) and (5), and "reasonable" under UCC section 9-611(b), where the notice does not describe the consumer's deficiency liability as the difference between what the consumer owes and the "fair market value" of the collateral, and the transaction is governed by MVRISA?

Williams v. Am. Honda Fin. Corp., 858 F.3d 700, 703 (1st Cir. 2017), certified question answered, 479 Mass. 656 (2018) (emphasis added). Therefore, the question of what circumstances would allow for sufficient, reasonable notice under the UCC and RISA was explicitly asked by the First Circuit.[7] The Williams decision definitively answered that question by holding that a Pre-Sale Notice is "never sufficient" unless it describes that the post-sale deficiency will be calculated based on the fair market value of the vehicle. See Williams, 479 Mass. at 657-658 ("the pre-sale and post-sale notices provided to the debtor must expressly describe the deficiency as the difference between the amount owed on the loan and the fair market value of the vehicle"); Williams v. Am. Honda Fin. Corp., 907 F.3d 83, 87 (1st Cir.

---

[7] Even if the SJC's decision somehow exceeded the scope of the question, the SJC routinely provides guidance on Massachusetts law beyond the specific facts or questions presented. See e.g. Silva v. Rent-A-Ctr., Inc., 454 Mass. 667, 669 (2009) (offering guidance on a significant question of Massachusetts law even though it was beyond the scope of what was presented to the court).

2018) (interpreting the SJC's decision to require that notices expressly describe that deficiencies are the difference between the fair market value of the collateral and the debtor's balance).

Contrary to Santander's suggestion, the SJC's interpretation of the UCC and RISA – both Massachusetts statutes – is definitive and binding as a matter of state law. See Dellelo v. Maloney, 233 Fed.Appx. 15, 16, 2007 WL 2389609, at *1 (1st Cir. 2007) ("In their supplemental brief, appellants argue that the SJC erroneously decided the qualified immunity issue. However, the views of the state's highest court with respect to state law are binding on the federal courts") (citations and internal quotations omitted); Fischer v. Bar Harbor Banking & Tr. Co., 857 F.2d 4, 7 (1st Cir. 1988) ("The purpose of certification is to ascertain what the state law is"); Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) ("SJC… has the final word on questions of Massachusetts state law."); Zagrodny v. Brady, C.A. No. 05–12551–GAO, 2008 WL 4723634, *7 n. 6 (D. Mass. Oct.24, 2008) (observing that it may be "impossible for the SJC to misinterpret its own precedents. [The precedents] mean what the [SJC] most recently says they mean.").

Finally, any suggestion that the SJC is somehow "rewriting" statutes is disingenuous at best. See Dkt. 4 at 13. The UCC requires pre-sale notice that includes "a description of any liability for a deficiency of the person to which the notification is sent" that is both "sufficient" and "reasonable." UCC §§ 9-614(1)(B), (4) & (5); UCC § 9-611(b). In turn, RISA § 20B requires that the fair market value of the collateral be used to determine that deficiency liability. The SJC in Williams did no more than read two Massachusetts statutes together (which, again, include an explicit cross reference) and clearly state the requirements of Massachusetts law by stating that a pre-sale repossession notice is never sufficient if it fails to describe the deficiency liability using the fair market value.

## CONCLUSION

For the foregoing reasons, the Santander's Motion To Dismiss Count I Of Plaintiffs' Complaint should be denied in its entirety.

Respectfully submitted,

LISA PIAZZA,
JOSEPH BORDEN,
RICHARD YUNKER.
By their attorneys,

*/s/ Raven Moeslinger*
Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Law Office of Nicholas F. Ortiz, P.C.
99 High Street, Suite 304
Boston, MA 02110
(617) 338-9400
rm@mass-legal.com
nfo@mass-legal.com

Dated: August 27, 2019

## CERTIFICATE OF SERVICE

I, Raven Moeslinger, hereby certify that today I caused to be served the within on counsel for the defendants via ECF service.

*/s/ Raven Moeslinger*