UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA PIAZZA, JOSEPH BORDEN, and RICHARD YUNKER, | Civil Action No. 1:19-cv-11697-ADB |
| Plaintiffs, | |
| v. | **LEAVE TO FILE GRANTED ON SEPTEMBER 9, 2019** |
| SANTANDER CONSUMER USA INC. and JMAC DISTRIBUTION LLC, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANT SANTANDER CONSUMER USA INC.'S
MOTION TO DISMISS COUNT I OF PLAINTIFFS' COMPLAINT**

Michael T. Grant (BBO NO. 677893)
Charles A. Ognibene (BBO NO. 300774)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: +1 857 488 4200
Fax: +1 857 488 4201
MTGrant@duanemorris.com
CAOgnibene@duanemorris.com

## INTRODUCTION

Plaintiffs contend that SC's pre-sale notices are legally insufficient because they did not give Plaintiffs "explicit notice that the fair market value of [their] vehicle[s], not the sale price, will be deducted from the amount they [owed]." Compl., ¶ 39. They further argue in their opposition to Santander Consumer USA Inc.'s ("SC") Motion to Dismiss [Dkt. 8] (the "Opp.") that under Massachusetts law a pre-sale notice is never sufficient unless the description of the deficiency calculation includes the term "fair market value". Opp., pp. 6, 7, 8, 14. But that is not the law of Massachusetts, and their reliance on *Williams v. American Honda Finance Corp.*, 479 Mass. 656 (2018) for that proposition is misplaced. As set forth in its moving submission and below, SC's pre-sale notices to Plaintiffs satisfied Article 9 of the Massachusetts Uniform Commercial Code ("UCC")[1] and *Williams* in that they provided reasonable notice to Plaintiffs that their deficiency calculation would be subject to the proscriptions of both UCC § 9-614 and Section 20B of Massachusetts' Retail Installment Sales Act ("RISA").[2]

## ARGUMENT

### SC's Pre-Sale Notices to Plaintiffs Satisfy Massachusetts Law.

### A. A creditor's pre-sale notice obligation under Massachusetts law.

A creditor's pre-sale notice must provide consumers with the information set forth in UCC § 9-614(1), including "a description of any liability for a deficiency," via written notification before disposing of their respective motor vehicles. But "a particular phrasing of the notification

---

[1] *See* M.G.L. c. 106, § 9-610 *et seq.*

[2] M.G.L. c. 255B, § 20B.

is not required." UCC § 9-614(2). Further, the pre-sale notice need only be reasonable as to, *inter alia*, "its content." *Id.* § 9-611, Official Comment 2 (citing UCC § 9-614).[3]

The purpose of the pre-sale notice is to give "the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser or to see that the sale is conducted in a commercially reasonable manner." *Buran Equipment Co. v. H. & C. Investment Co.*, 142 Cal. App. 3d 338, 341 (1st Dist. 1983); *Wilmington Tr. Co. v. Conner*, 415 A.2d 773, 776 (Del. 1980) (same). "Cases involving notice issues should be resolved with these three purposes in mind." 4 White, Summers, & Hillman, Uniform Commercial Code § 34:30 (6th ed.).

Nothing in the SJC's *Williams* opinion or the First Circuit's decision following the SJC's answers to the certified questions changed the creditor's fundamental notice obligations or the purpose of the pre-sale notice. Rather, the SJC, upon being asked by the First Circuit to determine, *inter alia*, whether a pre-sale notice that exclusively follows the UCC safe-harbor form provides reasonable notification and is therefore sufficient, concluded that pre-sale (and post-sale) notices will be sufficient if they "accurately describe[ ] the deficiency under G. L. c. 255B, § 20B." *Williams*, 479 Mass. at 669. In other words, the SJC said that, consistent with UCC § 9-614(1), a pre-sale notice must include a description of the deficiency, and that the description must take into account RISA § 20B.[4] Further, as Plaintiffs concede, *Williams* does not require the use of "magic

---

[3] Plaintiffs mistakenly argue there is a difference between "reasonable" notice and "sufficient" notice. Opp., pp. 12-13. If a notice provides "reasonable notification" of the information required by UCC § 9-614(1), it is sufficient. UCC § 9-614, Official Comment 2 ("Paragraph (1) sets forth the information required for a reasonable notification in a consumer-goods transaction. A notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law. Compare Section 9-613(2), under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section.").

[4] M.G.L. c. 255B, § 20B(e)(1) states: "If the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more *the creditor shall be entitled to recover from the debtor the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due and shall also be entitled to any reasonable repossession and storage costs*, provided he has complied with all provisions of this section." (Emphasis added.)

language," nor mandate the use of the term "fair market value" in a pre-sale notice in order for the notice to be "sufficient" under the UCC.  Opp., p. 9.

Moreover, on a practical level, mandating that the term "fair market value" be used in SC's pre-sale notice despite its explicit reference to RISA § 20B would be of no practical use to Plaintiffs here.  Though they fail to allege in their Complaint that they reviewed the notices, Plaintiffs argue in their opposition that the absence of the term "fair market value" from the description of the deficiency calculation deprived them of "valuable information" that would have informed the decision "whether to redeem the vehicle or let it go." Opp., p. 7.  Respectfully, if the justices on the First Circuit were unable to decipher the meaning of "fair market value" in RISA § 20B, such that they certified that question to the SJC for clarification, it is unlikely that Plaintiffs' respective decisions to redeem their vehicles or not rested on the distinction between "sale price" and "fair market value" in pre-sale notices.  *See, e.g., Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002) ("an unsophisticated consumer cannot be expected to know the legal meanings of terms"). It is far more likely that, as a Massachusetts court recently concluded, "the decision to redeem a vehicle likely concerns whether a consumer can afford to do so or not and not how much a consumer's account will be credited post-sale." *Dellorusso v. PNC Bank, N.A.*, No. 1877-cv-01475 (Mass. Super. May 3, 2019) at p. 8.[5] *See also Buran Equipment Co.*, 142 Cal. App. 3d at 341; *Wilmington Tr. Co.*, 415 A.2d at 776.

### B.    SC's notices accurately describe the deficiency calculation.

In contrast to the creditor Honda's pre-sale notice in *Williams*, SC's pre-sale notices were consistent with the purpose of the UCC and sufficiently described Plaintiffs' deficiency liability. Indeed, Plaintiffs do not allege that SC's pre-sale notices failed to accomplish any of the three

---

[5] A copy of the <u>Dellorusso</u> Memorandum of Decision dated May 3, 2019 is attached as <u>Exhibit 1</u>.

aforementioned primary purposes of such notices.  They do not allege they would have acted differently if the notices had been worded differently.  And they do not allege that their accounts were credited less than the fair market value of their respective vehicles.  In sum, Plaintiffs do not contend that the information in the pre-sale notices had any bearing whatsoever on their decision-making with respect to the disposition of their respective vehicles following their default, or that SC violated Massachusetts law in calculating their deficiency balances.

Moreover, SC's pre-sale notices to Plaintiffs explicitly referenced the interplay between the UCC and RISA and accurately described the deficiency calculation using the formula expressly deemed sufficient in UCC § 9-614, subject to any modification required by any displacing provisions in RISA § 20B.  Specifically, SC's description of the potential deficiency liability in the pre-sale notices begins with the language contained in the safe harbor form in UCC § 9-614(3): "The money that we get from the sale (after paying our costs) will reduce the amount you owe." Compl., Ex. A, at pp. 1, 3 and 5.  The pre-sale notices then explicitly state that the deficiency calculation is subject to, *inter alia*, RISA §20B: "If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws. ch. 255B § 20B).[6]  By including that language in the notices, SC informed Plaintiffs that SC is required to adjust its calculation of the amount Plaintiffs owe following the sale of their vehicles to account for the fair market value of the vehicle, to the extent the fair market value does not equal the net sale proceeds. And again, Plaintiffs do not allege that SC failed to properly calculate their respective deficiency balances.

---

[6] This reference to RISA § 20B distinguishes SC's pre-sale notices from the notice that was at issue in *Williams v. Am. Honda Fin. Co.*.  *See infra*.

Plaintiffs suggest that SC's statement that the consumer "may" owe SC the difference between their unpaid balance and the net proceeds at the sale is contrary to RISA § 20B's requirement that the creditor credit the consumer for the "fair market value" of the repossessed vehicle. Opp., p. 8. Tellingly, however, Plaintiffs fail to articulate the supposed contradiction between stating the deficiency balance will be calculated by deducting the sale proceeds from the account balance, subject to applicable law (including RISA § 20B), and stating that the deficiency balance will be calculated by deducting the "fair market value" from the account balance. They so fail because there is no contradiction. Plaintiffs' inchoate argument is a thinly veiled attempt to convince the Court that Massachusetts law requires a creditor to use the term "fair market value" in describing a consumer's liability for a deficiency. Plaintiffs' assertion is contrary to the explicit provisions of UCC Article 9 and otherwise unsupported by Massachusetts law, including the *Williams* case. Indeed contrary to Plaintiffs' concession that the *Williams* case does not require the use of "magic words." Opp., p. 9.

Contrary to Plaintiffs' claim in their opposition, while SC's presale notice does not use the term "fair market value," the notice nevertheless accurately describes the deficiency calculation because the secured party sale typically produces fair market value. Indeed, the SJC reached that exact conclusion in *Williams*. In answering the First Circuit's certified question concerning the meaning of "fair market value" in RISA § 20B(e)(1), the SJC opined that the sale price obtained at an automobile auction "is compelling, albeit not conclusive evidence, of the fair market value of the repossessed automobile." 479 Mass. at 661. This is because "creditors have an incentive to obtain the highest possible price for collateral that they repossess." *Id.* at 664-65 (citing Federal Trade Commission, Trade Regulation; Credit Practices; Final Rule, 49 Fed. Reg. 7740, 7783 (Mar. 1, 1984)). One factor that drives this incentive is that creditors are unlikely to "recover much, if

any, of the resulting deficiency." *Id.* at 665 (citing National Consumer Law Center, Repossessions § 12.1.1 (9th ed. 2017)).   "Thus, for the creditor, the repossession and disposition of the collateral is almost always the last opportunity to minimize the loss caused by a consumer defaulting."  *Id.* (citing *Matter of Excello Press, Inc.*, 890 F.2d 896, 901 (7th Cir. 1989) ("[W]hy would [a secured party] forgo a dollar today for the chance to enforce a deficiency judgment tomorrow?") (brackets in original)).

In holding that the "fair market value" of a repossessed motor vehicle may – and often does – equal the proceeds a creditor receives from an automobile auction, the SJC opined, and the First Circuit subsequently affirmed, that a creditor ***may*** use the sale proceeds as the "fair market value" component in the actual deficiency calculation.  479 Mass. at 664-65; *Williams v. Am. Honda Fin. Corp.*, 907 F.3d 83, 87 (1st Cir. 2018) (declining to disturb district court's ruling that Honda sold the car for fair market value).  Not surprisingly Plaintiffs assert that the SJC's extensive analysis of the meaning of "fair market value" in *Williams* is "not relevant here".  Opp., p. 2.

Given that (i) the SJC recognizes that creditors, like SC, seek the highest possible price for the vehicle and that often occurs through a sale, and (ii) SC described the deficiency as the difference between the net sale proceeds and the consumer's account balance, subject to RISA § 20B (and its "fair market value" credit), SC provided reasonable notification to the consumer that the deficiency calculation will include the sale price of the vehicle unless the fair market value is greater.  *See* UCC § 9-614(2); *id.*, § 9-611, Official Comment 2.  SC's notification was therefore sufficient under UCC § 9-614.  *See Williams*, 479 Mass. at 669 ("Ultimately, the notice required by the Uniform Commercial Code will only be considered sufficient if it accurately describes the deficiency under G. L. c. 255B, § 20B.").

Plaintiffs' contention that SC's incorporation of RISA § 20B by reference is inappropriate is simply not the law in Massachusetts.  *See, e.g.*, *Greene v. Ablon*, 794 F.3d 133, 145 (1st Cir. 2015)  ("Unless incorporation by  general  reference  is  explicitly  rejected  by  some statute or regulation, incorporation by a clearly stated general reference will suffice.") (quoting *Chicopee Concrete Serv., Inc. v. Hart Eng'g Co.,* 398 Mass. 476 (1986)); *James B. Nutter & Co. v. Cassidy*, 2016 WL 4091145, at *5 (Mass. Land Ct. Aug. 1, 2016) (holding it is well-settled that mortgages may incorporate the statutory power of sale by reference where, *inter alia*, the mortgage refers to "other remedies permitted by applicable law").[7]

 Indeed, the  argument that a "cursory" reference to a statute "impermissibly tasks the consumer," Opp., p. 11, flies in the face of Massachusetts consumer protection statutes, which often require consumers to refer to, and perform basic analysis of, statutory text to ascertain their rights. *See, e.g.*, M.G.L. c. 260, § 5A (setting forth the limitations period for actions brought under various consumer protection statutes, listed according to chapter and section).

Notably, Plaintiffs point to no case holding that notice to consumers cannot incorporate relevant law by reference, particularly where the Legislature has expressly approved such forms of notification.  In addition, their reliance on *Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy Fund*, 466 Mass. 368 (2013) and *Smithson v. United States*, 847 F.2d 791 (Fed. Cir. 1988) is misplaced.   The  issue  before  the  court  in  *Brigade*  concerned  whether

---

[7] Massachusetts is not alone in following this common sense doctrine.  *See, e.g., Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975 (Fla. 2017) (holding notice stating "[a]ny amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No–Fault Law . . . including, but not limited to, all fee schedules" was legally sufficient); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (holding incorporation by reference of AAA rules into arbitration provision where employer failed to provide employee with a copy of the rules was not unconscionable or oppressive); *Am. Dredging Co. v. Plaza Petroleum, Inc.*, 799 F. Supp. 1335, 1338 (E.D.N.Y. 1992), *vacated in part on other grounds,* 845 F. Supp. 91 (E.D.N.Y. 1993) (rejecting argument clause stating product was sold "subject to" a separate terms and conditions document that plaintiff purported not to have seen or agreed to was not validly incorporated into the contract).

defendant's bylaws incorporated the New York Stock Exchange's ("NYSE") requirement that listed companies hold a shareholders' meeting each fiscal year pursuant to § 302 of the NYSE manual. Defendant argued its bylaws, which stated an annual shareholders' meeting "shall be held, so long as Common Shares are listed for trading on the [NYSE], on at least an annual basis," implicitly incorporated § 302 of the NYSE manual and its fiscal-year requirement by reference. 466 Mass. at 374. In contrast, here SC's pre-sale notices explicitly stated that the deficiency calculation is subject to RISA § 20B.  Compl., Ex. A.

*Smithson* is distinguishable on similar grounds. There, the court examined security agreements between the plaintiffs and the Farmers Home Administration (the "FmHA") which contained a reference to all existing and future FmHA regulations. 847 F.2d at 794. ("This agreement is subject to the present regulations of the secured party [FmHA] and to its future regulations not inconsistent with the express provisions hereof."). The court found it "highly doubtful" that the agency intended to incorporate "the entire corpus of FmHA regulations without exception" into its security agreements, particularly where many of the regulations incorporated "would . . . have nothing specific to do with FmHA's transactions with the Smithsons." *Id.*  Here, by contrast, SC's acknowledgement that it is "subject to" a *specific* section of the RISA, a section particularly relevant to SC's calculation of a consumer's deficiency, is entirely different than the reference in *Smithson* to all of an agency's regulations in the context of an arms-length contractual obligation. Indeed, the *Smithson* court's concern about binding parties to contract terms upon which they did not agree is inapplicable here where SC's pre-sale notices explicitly affirm SC's intention to abide by RISA § 20B.

Finally, Plaintiffs' argument that *Williams* stands for the proposition that a "specific *message*," that includes the term "fair market value," is required under Massachusetts law

mischaracterizes the SJC's opinion.   Opp., p. 9 (emphasis in original).   Reading *Williams* as obligating creditors to include particular language in pre-sale notices would override UCC § 9-614's mandate that no particular language is required.   UCC § 9-614(2).   Such an interpretation would be tantamount to finding that the SJC acted in a legislative capacity rewriting a statute.   As discussed in SC's opening brief, the SJC could not have gone that far.   Doc. 5 at 13-14.   It is one thing to read *Williams* as harmonizing two statutes; it is another to read *Williams* as rewriting a statute to require particular words or phrasing.[8]

## **CONCLUSION**

For the foregoing reasons, SC respectfully requests that the Court grant its Motion to Dismiss Count I of the Complaint with prejudice.

---

[8] UCC § 9-614(2) ("a particular phrasing of the notification is not required.").

Respectfully submitted,

SANTANDER CONSUMER USA INC.
By its attorneys,


/s/ Michael T. Grant
Michael T. Grant (BBO No. 677893)
Charles A. Ognibene (BBO No. 300774)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: +1 857 488 4200
Fax: +1 857 488 4201
MTGrant@duanemorris.com
CAOgnibene@duanemorris.com


Robert J. Brener (*pro hac* motion to be filed)
DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, NJ 07102-5429
Telephone: +1 973 424 2000
Fax: +1 973 424 2001
RJBrener@duanemorris.com

Dated: September 9, 2019

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael T. Grant, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 9, 2019.  I further certify that on this 9th day of September a copy of the foregoing was served, via email on the following:

William D. Chapman, Esq.
wchapman@melicklaw.com
Melick & Porter, LLP
One Liberty Square
Boston, MA 02109

*Counsel for JMAC Distribution, LLC*

/s/ Michael T. Grant