UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA PIAZZA, JOSEPH BORDEN, and RICHARD YUNKER, | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 19-cv-11697-ADB * |
| SANTANDER CONSUMER USA INC. and JMAC DISTRIBUTION LLC, | * * * |
| Defendants. | * |

## **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

On June 11, 2019, Plaintiffs Lisa Piazza, Joseph Borden, and Richard Yunker ("Plaintiffs") filed a class action in Middlesex Superior Court alleging violation of the Massachusetts Commercial Code (Count I) against Santander Consumer USA Inc. ("Santander"). [ECF No. 7 at 14–23 ("Compl.")]. Piazza also brought a claim against Santander and JMAC Distribution LLC for breaching the peace during the course of their repossession of her vehicle (Count II). [Id. ¶¶ 59–62]. On August 6, 2019, Santander removed the case from state court. [ECF No. 1]. Currently before the Court is Santander's motion to dismiss Count I of the complaint. [ECF No. 4]. For the reasons set forth below, Santander's motion to dismiss Count I, [ECF No. 4], is <u>DENIED</u>.

## I. BACKGROUND

Between July 2017 and July 2018, Plaintiffs each entered into a loan agreement with Santander for the purchase of a motor vehicle. [Compl. ¶¶ 8, 25, 31]. Between December 2018 and January 2019, Santander repossessed each of Plaintiffs' vehicles due to defaults on the loans.

[Id. ¶¶ 13, 30, 36]. Following repossession, Santander sent each of the Plaintiffs a notice advising them of its intent to resell their vehicles. [Id. ¶ 37]. These notices each stated in part:

> We will sell the Vehicle at a private sale sometime after [date] . . . . The money that we get from the sale (after paying our costs) will reduce the amount you owe. If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws. ch. 255B § 20B).

[Id. at Ex. A (copy of pre-sale notice sent to Piazza); id. ¶¶ 37–38]. Plaintiffs allege in Count I of their complaint that these pre-sale notices violated Article 9 of the Uniform Commercial Code ("UCC"), as adopted by the Massachusetts legislature, by incorrectly describing Plaintiffs' potential liability for a deficiency. See [id. ¶ 57]. On August 13, 2019, Santander filed a motion to dismiss Count I. [ECF No. 4]. Plaintiffs opposed, [ECF No. 8], Santander filed a reply, [ECF No. 11], and Plaintiffs filed a sur-reply, [ECF No. 14].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of

2

plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). When reviewing a motion to dismiss, the Court may consider documents outside of the pleadings, "'the authenticity of which are not disputed by the parties,' making narrow exceptions to the general rule 'for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 622–23 (1st Cir. 2019) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. DISCUSSION

### A. UCC and RISA

Two Massachusetts statutes are relevant to the sale of repossessed motor vehicles and are at the center of this dispute: the UCC and the Motor Vehicle Retail Installment Sales Act ("RISA"). The UCC "generally govern[s] defaults in secured transactions." Williams v. Am. Honda Fin. Corp., 98 N.E.3d 169, 179 (Mass. 2018). Under the UCC, after a repossession but before the sale of a vehicle, a creditor must provide a written notice containing a "description of any liability for a deficiency of the person to which the notification is sent." Mass. Gen. Laws ch. 106, § 9-614(1)(B). The UCC calculates a deficiency using the proceeds of a "commercially reasonable" sale. See id. at § 9-615. The UCC also provides creditors with a form notice, referred to as a "safe harbor" notice, which is represented as "provid[ing] sufficient information." See id. at § 9-614(3), (4); Williams, 98 N.E.3d at 179 (discussing safe harbor language). The safe harbor notice includes the following language:

> The **money that we get from the sale** (after paying our costs) **will reduce the amount you owe**. If we get less money than you owe, you (*will or will not, as applicable*) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

Mass. Gen. Laws ch. 106, § 9-614(3) (emphasis added in bold).

Where the UCC calculates a deficiency using the proceeds of a commercially reasonable sale, RISA calculates a deficiency using the fair market value of the vehicle:

> If the unpaid balance of the consumer credit transaction at the time of default was two thousand dollars or more the creditor shall be entitled to recover from the debtor the deficiency, if any, **resulting from deducting the fair market value of the collateral from the unpaid balance due** and shall also be entitled to any reasonable repossession and storage costs, provided he has complied with all provisions of this section.

Mass. Gen. Laws ch. 255B, § 20B(e)(1) (emphasis added). This conflict between the UCC and RISA is resolved in a related subsection of RISA, which states that its provisions displace the UCC to the extent that the UCC imposes different obligations in the context of motor vehicle credit sales and repossessions. Id. at § 20B(d); Williams, 98 N.E.3d at 179 ("General Laws c. 255B, § 20B(d), provides that the Uniform Commercial Code applies 'unless displaced by the provisions of [§ 20B] and [§ 20A].'" (quoting Mass. Gen. Laws ch. 255B, § 20B(d))). Given that the two statutes calculate post-repossession deficiencies differently (RISA using fair market value and the UCC using sales proceeds from a commercially reasonable sale), RISA displaces the UCC's method of calculation with respect to motor vehicles. Williams, 98 N.E.3d at 179.

### B. Williams Decisions

The defining case on which each party relies is a 2018 case from the Massachusetts Supreme Judicial Court ("SJC"), Williams v. American Honda Finance Corp., 98 N.E.3d 169. See also Williams v. American Honda Finance Corp., 907 F.3d 83 (1st Cir. 2018) (analyzing facts in light of the SJC's responses to certified questions). The plaintiff in that case purchased a motor vehicle in 2007, financed in part through an installment-sale contract with Honda. Williams, 907 F.3d at 85. The plaintiff failed to make her loan payments which led the defendant ("Honda") to repossess the vehicle and to send her a notice of its intent to sell the vehicle at auction. Id. That notice described the plaintiff's liability by stating that, "[t]he money

4

received from the sale (after paying our costs) will reduce the amount you owe. If the auction proceeds are less than what you owe, you will still owe us the difference." Id. The plaintiff sued Honda, alleging that the pre-sale notice incorrectly stated that her liability would be calculated using the vehicle's sale price (tracking language in the UCC) instead of the vehicle's fair market value (tracking language in RISA). Id. The district court granted summary judgment for Honda, and the plaintiff appealed. Id. The First Circuit then certified several questions to the SJC, the most pertinent of which for the purposes of Santander's motion was the question, "Whether, and in what circumstances, a pre-sale notice is 'sufficient' under UCC section 9-614(4) and (5), and 'reasonable' under UCC section 9-611(b), where the notice does not describe the consumer's deficiency liability as the difference between what the consumer owes and the 'fair market value' of the collateral, and the transaction is governed by []RISA?" Id. at 86.

The SJC concluded that "the notice that is required by the [UCC] is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." Williams, 98 N.E.3d at 179. The court held that "notices provided to the debtor must expressly describe the deficiency as the difference between the amount owed on the loan and the fair market value of the vehicle." Id. at 171. The court also stated that, "[b]ecause the [UCC] and [RISA], calculate deficiencies differently, the use of the [UCC] safe harbor language is inconsistent with Massachusetts law" and "[u]ltimately, the notice required by the [UCC] will only be considered sufficient if it accurately describes the deficiency under [RISA]." Id. at 179. The SJC went on to suggest alternative standard-form language that creditors could use when providing pre-sale notice under the UCC:

> The fair market value of your vehicle will be used to reduce the amount you
> owe, which is your outstanding balance plus the reasonable costs of repossessing

and selling the vehicle. If the fair market value of your vehicle is less than you owe, you (will or will not, as applicable) still owe us the difference. If the fair market value of your vehicle is more than you owe, you will get the extra money, unless we must pay it to someone else.

Id.

After receiving guidance from the SJC, the First Circuit determined that Honda's notices to the plaintiff, describing the "deficiency as the difference between 'the amount you owe' and 'the money received from the sale,' plainly d[id] not provide this necessary express description" and therefore did not comply with the UCC's requirements. Williams, 907 F.3d at 87.

### C. Analysis of Santander's Pre-Sale Notice

The parties agree that a creditor does not need to use the magic words "fair market value" in a pre-sale notice but disagree as to what is required. [ECF No. 5 at 12; ECF No. 8 at 10]. Santander argues that its notice was sufficient and distinct from the notice at issue in Williams because Santander's notice "explicitly referenced and incorporated RISA § 20B," whereas Honda's did not. [ECF No. 5 at 14]. In contrast, Plaintiffs argue that Santander's "vague and unexplained citation to the existence of RISA §20B" in its notice is a "far cry from the descriptive statement required by Williams or an explicit incorporation of § 20B(e)(1)—the applicable statute and subsection." [ECF No. 8 at 11–12].

In Williams, the SJC set out a clear standard for a sufficient description of the deficiency calculation in pre-sale notices to debtors. Specifically, the SJC stated that notices "must describe the deficiency as the difference between the fair market value of the collateral and the debtor's outstanding balance because this is what is required by [RISA]." Williams, 98 N.E.3d at 179. The SJC determined that using the UCC's safe harbor language, without describing the deficiency with reference to the fair market value of the vehicle, "is inconsistent with Massachusetts law." Id.

Santander's pre-sale notice does not include the words "fair market value," nor does Williams require the use of these specific words. See Williams, 98 N.E.3d at 179. The pre-sale notice must, however, "describe" the method of calculation in a way that signals to the debtor that the fair market value will be used to determine the deficiency. Id. Santander's pre-sale notice contains a passing reference to RISA § 20B, which contains multiple subsections, only one of which mentions fair market value. See [Compl. at Ex. A]; Mass. Gen. Laws ch. 255B, § 20B. Santander claims that it may incorporate RISA § 20B by reference in its pre-sale notice to accomplish sufficient notice and cites to case law on references incorporated into contracts in support of its contention. [ECF No. 5 at 14–15].

"Extrinsic materials may be incorporated into a contract by reference as long as 'the language used in the contract . . . clearly communicate[s] that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).'" Greene v. Ablon, 794 F.3d 133, 145 (1st Cir. 2015) (quoting NSTAR Elec. Co. v. Dep't of Pub. Utils., 968 N.E.2d 895, 905 (Mass. 2012)).[1] It is not clear, at this stage, that Plaintiffs would have understood the pre-sale notice's reference to § 20B as a reference to calculating a deficiency by using the fair market value of the vehicle. For example, Plaintiffs may have understood the reference to § 20B to simply be an "acknowledge[ment] that the referenced material [wa]s relevant," rather than a specific reference to §20B(e)(1) and the use of fair market value to calculate a deficiency. See NSTAR, 968 N.E.2d at 905. Further, it is plausible that Plaintiffs could have understood the pre-sale notice's reference to "applicable law (including

---

[1] The Court notes that the cases cited refer to contracts, not notices required by statute.

Mass. Gen. Laws ch. 255B § 20B)" to refer to whether anything was owed ("you may owe"), rather than how much was owed ("the difference"). See [Compl. at Ex. A].

Where the SJC has held that pre-sale notices to the debtor "must **expressly describe** the deficiency as the difference between the amount owed on the loan and the fair market value of the vehicle," a citation to RISA may not be sufficient. Williams, 98 N.E.3d at 171 (emphasis added). At this stage, Plaintiffs have stated a plausible claim that Santander's pre-sale notice was insufficient under RISA and Williams.

## IV. CONCLUSION

Accepting as true all well-pleaded facts and having analyzed them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a plausible claim for relief in Count I. See Gilbert, 915 F.3d at 80. Accordingly, Santander's motion to dismiss Count I of the complaint, [ECF No. 4], is DENIED.

**SO ORDERED.**

March 12, 2020 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE