UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

LISA PIAZZA, JOSEPH BORDEN, and )
RICHARD YUNKER, )
)
      Plaintiffs, )
)
v. )       C.A. No. 1:19-CV-11697-ADB
)
SANTANDER CONSUMER USA INC., )
and JMAC DISTRIBUTION LLC, )
)
      Defendants. )
_____ )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page(s)**

I. Introduction .................................................................................................................... 1

II. Statement of the Case ................................................................................................... 1

III. The Terms of the Settlement ....................................................................................... 4

IV. The Agreement Should Be Preliminarily Approved as Fair, Reasonable, and Adequate ... 5

  A. Standard And Process For Approval ........................................................................ 5

  B. The Settlement Should Be Preliminarily Approved ................................................ 7

    1. The Class Representative and Class Counsel Have Adequately Represented The Class  7

    2. The Proposal Was Negotiated at Arm's Length .................................................. 8

    3. The Relief Provided For The Class Is Adequate ............................................... 9

    4. The Proposed Settlement Treats Settlement Class Members Equitably Relative To Each Other ................................................................................................................ 12

    5. The Proposed Notice To Settlement Class Members Is Adequate ..................... 13

    6. The Factual Record Was Well Developed Through Independent Investigation And Discovery ................................................................................................................... 14

V. The Class Should Be Certified for Settlement Purposes ............................................ 14

  A. Rule 23(b)(3) ......................................................................................................... 15

    1. Numerosity ......................................................................................................... 15

    2. Commonality ...................................................................................................... 15

    3. Typicality ........................................................................................................... 15

    4. Adequacy Of Representation .............................................................................. 16

  B. Rule 23(b)(3) ......................................................................................................... 16

    1. Predominance ..................................................................................................... 16

    2. Superiority .......................................................................................................... 17

VI. Conclusion ................................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Products v. Windsor*,
   521 U.S. 591 (1997)..............................................................................7, 16, 17

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass.) ...................................................................8

*In re Credit Suisse–AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008)..................................................................15

*Duhaime v. John Hancock Mutual Life Ins. Co.*,
   177 F.R.D. 54 (D. Mass. 1997)..............................................................7, 16

*Gradie v. C.R. England, Inc.*,
   No. 2:16-cv-00768-DN, 2020 WL 6827783, at *10 (D. Utah, 2020) ....................11

*Grace v. Perception Technology, Inc.*,
   128 F.R.D. 165 (D. Mass. 1989)................................................................18

*Hall v. Capital One Auto Fin., Inc.*,
   Case No. 08-1181 (N.D. Ohio) ...................................................................11

*Hays v. Eaton Grp. Attorneys*,
   LLC, No. CV 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019)......................6, 14

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................5

*Lazar v. Pierce*,
   757 F.2d 435, 439 (1st Cir. 1985) ...............................................................7

*Little-King v. Hayt Hayt & Landau*,
   No. 11–5621 (MAH), 2013 WL 4874349, at *10-11 (D.N.J. Sept. 10, 2013) ........11

*Mitchell v. Prestige Fin. Servs.*,
   CV2010-090395 (Maricopa Cty., Ariz.)........................................................11

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits*
   *Fund*, 582 F.3d 30, 44 (1st Cir. 2009) .........................................................5

*Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008).................................................................15

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   296 F.R.D. 47 (D. Mass. 2013)...................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05MD1720, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019)............................................6, 7, 8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................................14, 17

*Purdie v. Ace Cash Express, Inc.*,
   No. 301CV1754L, 2003 WL 22976611, at *2 (N.D. Tex. Dec. 11, 2003) ...........................10

*Randle v. SpecTran*,
   129 F.R.D. 386 (D. Mass. 1988)...................................................................18

*In re Relafen Antitrust Litig.*,
   218 F.R.D. 337, 342 (D. Mass. 2003) ...........................................................15

*Rolland v. Cellucci*,
   191 F.R.D. 3, 10 (D. Mass 2000) ................................................................12

*Scott v. First American Title Ins. Co.*,
   No. 06–cv–286–J, 2008 WL 2563460, at *2-3 (D. N.H. Jun. 24, 2008) ..........................9

*Tardiff v. Knox Cty.*,
   365 F.3d 1 (1st Cir. 2004)........................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)...........................................................................16

*Waste Mgt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ....................................................................16

**Statutes**

G.L. c. 106, § 9-614 and § 9-616 ..................................................................2

G.L. c. 255B, § 20B .................................................................................2

G.L. c. 255B, § 20B(e)(1) ..........................................................................2

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................7, 14, 15, 16

Fed. R. Civ. P. 23(a)(2)............................................................................15

Fed. R. Civ. P. 23(a)(4)............................................................................16

Fed. R. Civ. P. 23(b)(3)................................................................14, 15, 16, 17

Fed. R. Civ. P. 23(c)(2).........................................................................14

Fed. R. Civ. P. 23(e) ........................................................................5, 6, 13

Fed. R. Civ. P. 23(e)(1)......................................................................13, 14

Fed. R. Civ. P. 23(e)(1)(B)(i–ii)................................................................6

Fed. R. Civ. P. 23(e)(2)....................................................................6, 7, 12

Fed. R. Civ. P. 23(e)(2)(A)...................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................8, 9

Fed. R. Civ. P. 23(e)(2)(C) .............................................................9, 10, 12

Fed. R. Civ. P. 23(e)(2)(C)(i)..................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(ii).................................................................13

Fed. R. Civ. P. 23(e)(2)(D) .................................................................12, 13

Fed. R. Civ. P. 23(e)(3)........................................................................6, 9

## Other Authorities

2 McLaughlin on Class Actions § 6:3 (12th ed.) ........................................17

*Manual for Complex Litig. (Fourth)*...............................................6, 13, 14

Newberg on Class Actions § 4:49 (5th ed. 2012) .......................................16

# I.      Introduction

The Parties have reached a settlement Agreement that will fully resolve this class action litigation.  Plaintiffs now seek preliminary approval of the Agreement, an order directing that notice issue to the Settlement Class, and an order scheduling a final approval hearing. The Agreement is attached as Exhibit 1. Santander assents to this motion.

The Agreement provides substantial benefits to the class of Massachusetts borrowers whose cars were repossessed by Santander Consumer USA Inc. ("Santander") and who were sent allegedly unlawful post-repossession notices. Under the Agreement, Class Members' alleged outstanding deficiency debts to Santander, which are estimated to total approximately $31.2 million, will be waived. Santander will also establish a cash fund of $5,600,000 to compensate Class Members. Class Members are not required to submit claim forms to obtain the benefits of the Agreement. And any residue will not revert to Santander, but will be paid over in equal parts to two *cy pres* recipients, National Consumer Law Center, Inc. (a nonprofit focused on consumer protection) and Local Initiatives Support Corporation (a nonprofit dedicated to community development).

The Agreement was negotiated at arm's length, after conducting substantial discovery (including formal and informal discovery and depositions) and litigating in earnest. The Parties entered negotiations with more than sufficient knowledge as to the strengths and weaknesses of their claims. The Agreement reached is fair, adequate, and reasonable, and should be preliminarily approved.

# II.      Statement of the Case

### *Factual Background*

This class action challenges the notices Santander sent to Massachusetts borrowers after it repossessed their cars. Specifically, the First Amended Complaint (ECF # 46) ("Complaint")

alleged that Santander's form notices are defective because they tell consumers that their deficiency liability will be calculated and collected using the automobile's *sale price*, while Massachusetts law requires that the borrower be given credit for the car's *fair market value.* Massachusetts Retail Installment Sales Act ("MVRISA"), G.L. c. 255B, § 20B(e)(1). Plaintiffs' Complaint alleged that Santander's notices violated the Massachusetts UCC, M.G.L. c. 106, §§ 9-614 and 9-616 (which requires an accurate explanation of an automobile loan deficiency in post-repossession notices) and the MVRISA. As a result, the Complaint alleged that the Plaintiffs and the class were entitled to statutory damages and were not liable for their alleged deficiency account balances.

The facts of Plaintiffs' repossession are representative. Santander repossessed each of the named Plaintiffs' vehicles.  Following the repossession, Santander sent each Plaintiff a post-repossession, Pre-Sale Notice advising them of its intent to sell their vehicles.  Complaint, ¶¶ 37-40. The Pre-Sale Notice described their deficiency liability as follows: "The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws. Ch. 255B § 20B)."  *Id*. at ¶¶ 38-39, <u>Exh. A</u>, Pre-Sale Notices.

Santander subsequently sold each of the named Plaintiffs' vehicles and sent them each a Post-Sale Notice that itemized and demanded each Plaintiff pay a loan deficiency based on the difference between their loan balance and the proceeds of a private sale, instead of the legally-mandated fair market value of their vehicles.  Complaint, ¶¶ 43-44, <u>Exh. B</u>, Post-Sale Notices.

***Procedural Background***

Plaintiffs commenced this action on July 11, 2019 in Middlesex County Superior Court. ECF #1.  Santander removed this case to this Court. *Id*.  Santander subsequently filed a motion to dismiss the complaint on grounds that its post-repossession notices did not violate the UCC or the MVRISA because, among other things, they included a reference to the MVRISA.  ECF #4, 5.  Plaintiffs opposed the motion, which was ultimately denied by the Court on March 12, 2020. ECF #8, 21.

On May 6, 2020, Plaintiffs filed a motion for class certification, seeking to certify a class consisting of individuals to whom Santander sent a Pre-Sale Notice.  ECF #26.  At Santander's request, the Court permitted Santander to take written discovery and depositions prior to responding to the motion for class certification.  ECF #37, 38.  Plaintiffs served interrogatories and document requests on Santander, to which Santander responded.  And Santander served document requests on Plaintiff Lisa Piazza (to which she responded) and completed depositions of Plaintiffs Lisa Piazza and Richard Yunker.  During discovery, Santander produced Post-Sale Notices it sent to the Plaintiffs that Plaintiffs believed reflected additional violations of the UCC and MVRISA.  Accordingly, Plaintiffs filed a motion to amend the complaint to add claimed violations related to the Post-Sale Notices, which the Court allowed.  ECF #41, 43.  Plaintiffs then followed with an amended motion for class certification adding a second proposed class consisting of individuals to whom Santander sent a Post-Sale Notice, which Santander opposed. ECF # 44, 59.

Throughout the course of the litigation, the Parties had on-again, off-again settlement discussions.  After the filing of the amended motion for class certification, those communications intensified.  Believing they were making significant progress towards reaching a class-wide

settlement, the Parties submitted a joint status report on November 20, 2020, informing the Court of their settlement discussions and requesting that the Court stay a decision on Plaintiffs' amended motion for class certification pending the conclusion of those discussions. ECF # 73.

After several months of extensive and detailed negotiations, the Parties were able to reach the settlement that is before this Court. Based on their review and analysis of the relevant facts and legal principles, Plaintiffs and their counsel believe that the terms and conditions of the Agreement are fair, reasonable, and adequate, and in the best interests of the Plaintiffs and the proposed Settlement Class. Exhibit 4, Declaration of Class Counsel, ¶ 7. Santander denies all liability, but has agreed to the settlement to avoid continued costs and the risks of litigation.

### III.    The Terms of the Settlement

The material terms of the settlement include the following:

1.    *Settlement Class:* The Settlement Class is composed of all Accounts with respect to which Santander sent a notice identical and/or substantially similar to the presale notices attached as Exhibit A to the Amended Complaint [Dkt. 46] (a "Contested Pre-Sale Notice") at any time during the Class Period[1] and sold leased, licensed or otherwise disposed of the vehicle referred to in such notice pursuant to such Contested Pre-Sale Notice, and/or sent a notice identical and/or substantially similar to the post-sale notice attached as Exhibit B to the Amended Complaint, on or after July 22, 2016; excluding: (i) any Account that includes within the applicable RISC (as defined in Section 1), a provision requiring the parties to submit to binding non-class arbitration in lieu of participation in litigation upon the election of either party, and (ii) any Account that is subject to a judgment or a release agreement in favor of Santander.

2.    *Relief for Settlement Class Members*:

   (i)    Santander will pay a total of $5.6 million (the "Cash Fund") to be used to make payments to Class Members, pay any court approved attorneys' fees and expenses, and service award to the Plaintiffs. Separately, Santander will pay up to $30,000 towards the costs of settlement administration, with any costs exceeding $30,000 to be deducted from the Cash Fund.[2] Santander will tender the Cash Fund to the Settlement Administrator within 15 days of the Effective Date of the Settlement;

---

[1] The "Class Period" is the period from June 11, 2015 through September 8, 2019.

[2] Plaintiffs do not anticipate that the administration costs will exceed $30,000.

  (ii)  Payments to Class Members will calculated as follows: The balance of the Cash Fund after the payment of costs of notice and administration exceeding $30,000, if any, service awards, and attorneys' fees and expenses shall be paid to Settlement Class Members on a pro-rata basis based on their alleged statutory damages as compared to the statutory damages of other Settlement Class Members; and

  (iii)  The contested liability of all Settlement Class Members (whose vehicles were disposed of by Santander) will be adjudged uncollectable, a sum that is estimated to total approximately $31.2 million.

3. *Notice and Administration*: Upon preliminary approval, the Settlement Administrator shall send notice to Settlement Class Members by first class mail in accordance with the Agreement and the schedule contained in the Preliminary Approval Order. A proposed Class Notice is attached to the Motion as <u>Exhibit 2</u>.

4. *Attorneys' Fees and Expenses*: The Agreement provides that Class Counsel may petition the Court for an award of reasonable attorneys' fees and expenses consisting of up to thirty-three percent of the Cash Fund (approximately $1.86 million), the equivalent of approximately five percent of the total monetary and debt relief provided to the Settlement Class. Santander has agreed not to object to this petition.

5. *Incentive Award*: The Agreement provides that Santander will not oppose payment of an incentive award of $7,500 to each of the proposed class representatives, to be paid from the Cash Fund and subject to Court approval.

6. *Release*: Settlement Class Members will release all claims that were asserted in the Action or that could have been asserted based on the same facts.

## IV. <u>The Agreement Should Be Preliminarily Approved as Fair, Reasonable, and Adequate</u>

### A. **Standard And Process For Approval**

Rule 23(e) requires court approval of a class action settlement. Approval typically involves a "two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106–07 (D. Mass. 2010). "[B]efore making a final decision on the 'approval' of a settlement, a court must first make a 'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id.* (citing *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters*

*Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009), *and* Manual for Complex Litigation (Fourth) § 13.14).

The 2018 Amendments to Rule 23, effective December 1, 2018, provide additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors under Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors being as follows:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019).

Finally, the First Circuit has long recognized a strong public interest in favor of settling

class actions. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985) ("…we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved …").

**B.    The Settlement Should Be Preliminarily Approved**

Here, consideration of all relevant factors demonstrates that the settlement is likely to be finally approved under Rule 23(e)(2). It should therefore be preliminarily approved and notice should be issued.

**1.    The Class Representative and Class Counsel Have Adequately Represented The Class**

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *15 (considering adequacy requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts look at whether representatives' interest are antagonistic to those of the class members). Where, as here, the injuries allegedly suffered by the named plaintiffs are the same as those the class allegedly suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Here, the proposed class representatives, Lisa Piazza and Richard Yunker, loyally and competently represented the Class for the almost two years of hard-fought litigation the Parties engaged in.  Ms. Piazza responded to written document requests, and both Ms. Piazza and Mr. Yunker were deposed.  Mr. Yunker also rejected an individual settlement offer that would have

likely netted him more relief than he will receive as a class representative and Settlement Class Member, demonstrating his loyalty to the class.  Plaintiffs have no interests that are antagonistic to or in conflict with the Settlement Class. And, if Ms. Piazza and Mr. Yunker were not ready and willing to serve as class representatives, there would be no settlement benefits at all for the class.[3]

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, litigated multiple motions, and are prepared to continue to devote sufficient resources to representing the Class. Class Counsel are seasoned class action practitioners whose lengthy experience in consumer law and class action litigation is demonstrated by the declaration attached to this memorandum. *See* Exhibit 4, Declaration of Class Counsel.

The "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

### 2.      The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *19; *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

The Parties vigorously litigated this case for almost two years, including multiple motions and a substantial amount of discovery. The Parties discussed settlement on-and-off

---

[3] For the avoidance of doubt, Plaintiff Joseph Borden will not be serving as a class representative.

during the litigation, but those efforts did not intensify until after Plaintiffs filed their amended motion for class certification. After obtaining sufficient information to meaningfully discuss resolution of the case, the Parties, through counsel, engaged in months-long, arm's length negotiations. The negotiations were productive and substantive, including discussions about the merits of Plaintiffs' claims, and the repossession notices and damages at issue, and they ultimately resulted in the settlement before this Court.

The parties' adversarial position throughout the course of this litigation confirms that the settlement was the result of an arms-length negotiation conducted by experienced counsel and therefore should be found presumptively reasonable. *See, e.g.*, *Scott v. First American Title Ins. Co.*, No. 06–cv–286–J, 2008 WL 2563460, at *2-3 (D. N.H. Jun. 24, 2008) (preliminarily approving class settlement, reasoning that filing and opposing two motions to dismiss and a motion to remand before reaching settlement reflected that the parties were "adversaries from [the litigation's] inception" and therefore that the agreement was reached through arms-length negotiation).

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of preliminary approval.

### 3.     The Relief Provided For The Class Is Adequate

The proposed relief to the Settlement Class is also adequate. Rule 23(e)(2)(C) provides factors to guide what constitutes adequate relief:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C). The proposed settlement here provides significant, meaningful and immediate benefits to the Settlement Class, while avoiding potentially years of delays and the risks inherent in all class action litigation if the case were to go to trial.

> a)  **The Agreement provides significant benefits to the Settlement Class**

The Agreement will, if approved, reduces to zero what is estimated to be approximately $31.2 million in alleged deficiency debts, constituting an average of approximately $9,600.00 in relief for each Settlement Class Member's Account. This provides a real and substantial benefit to Class Members. Santander repossessed and disposed of each of these Class Members' vehicles. Deficiency debts arising out of repossessions are burdensome, as already-cash-strapped debtors struggle to negotiate collection efforts arising out of often large alleged deficiencies without a vehicle often needed for income production. *See*, *e.g.*, *Purdie v. Ace Cash Express, Inc.*, No. Civ. A. 301CV1754L, 2003 WL 22976611, at *2 (N.D. Tex. Dec. 11, 2003) (debt relief was particularly significant benefit because "continued collection efforts for unpaid loans [were] an enormous source of strain and stress" on class members).

Additionally, Santander will establish a Cash Fund of $5,600,000 to be used to make payments to settlement Class Members. These funds will pay Class Members on a pro-rata basis, based on their alleged statutory damages.  After proposed deductions, the average cash payments will total an estimated $1,144.10 per Settlement Class Member Account.  The Cash Fund is non-reversionary, ensuring that none of the money will be returned to Santander.

Between cash payments and debt relief, each Settlement Class Member Account will receive an average of approximately $10,744.10 in relief.   The relief offered by the settlement is

more than adequate, particularly taking into account other similar settlements,[4] as well as the

costs, risks, and delay that could result from a trial and appeals. *See, e.g., Gradie v. C.R.*

*England, Inc.*, No. 2:16-cv-00768-DN, 2020 WL 6827783, at *10 (D. Utah, 2020) (in approving

class settlement that provided "exceptional value to the Class," considering both debt relief and

cash payments when calculating class members' average recovery).

      Additionally, Santander changed its post-repossession notices after this litigation

commenced such that they now reference the "fair market value" language (the absence of which

language forms the basis of this litigation), a factor that weighs in favor of approving the

settlement. *Little-King v. Hayt Hayt & Landau*, No. 11–5621 (MAH), 2013 WL 4874349, at *10-

11 (D.N.J. Sept. 10, 2013) (noting that defendant ceased using allegedly unlawful debt collection

letter as factor militating in favor of approving settlement).

**b)**     **The effectiveness of the proposed method of distributing relief to the Settlement Class**

      Payments to Class Members will be calculated as a pro-rata share of the net Cash Fund

based on Class Members' alleged statutory damages as compared to the statutory damages of

other Class Members.  Agreement, ¶ 4.2.  Here, no claims forms are required. Instead, all

Settlement Class Members will automatically have their alleged deficiency balances eliminated

and checks will be automatically mailed to them.  *Id*. at ¶ 4.1. This method of distributing relief

is effective and efficient and weighs in favor of granting settlement approval.

---

[4] *See, e.g., Hall v. Capital One Auto Fin., Inc*., Case No. 08-1181 (N.D. Ohio 2010) (settlement approved on behalf of Ohio consumers sent defective repossession notices of $36 million in deficiency waivers and $1.5 million cash; average cash payment to class member after deduction for attorneys' fees of $285); *Mitchell v. Prestige Fin. Servs.,* CV2010-090395 (Maricopa Cty., Ariz.) (settlement approved for state-wide class of borrowers sent defective repossession notices; settlement involved waiver of deficiency balances and cash payments to class members averaging $350).

          **c)**      **The terms of any proposed award of attorneys' fees, including timing of payment**

Here, Class Counsel will apply for court approval of an award of attorneys' fees and expenses at the time of the final approval hearing. Agreement, ¶ 4.4. Class Counsel intends to apply for an award of attorneys' fees and expenses representing thirty-three percent of the Cash Fund, or five percent of the total relief provided to the Settlement Class under the Agreement. *Id.*

          **d)**      **The costs, risks, and delay of trial and appeal**

Another factor in evaluating the adequacy of class relief is the costs, risks, and delay of trial and appeal. Rule 23(e)(2)(C)(i). There are multiple tangible risks here.

First, a judgment in Plaintiffs' favor is not guaranteed.  The Parties hotly dispute liability. Santander contends that its notices complied with the UCC and MVRISA because it referenced the MVRISA therein and properly calculated debtors' deficiency balances.  If Santander's position were credited by this Court, the Plaintiffs and Settlement Class would receive nothing. Second, even if the Court adopted Plaintiffs' position – that the notices violated the UCC and MVRISA – Santander would surely appeal the decision, causing significant delay and additional risk of non-recovery.  Instead, if approved by this Court, Settlement Class Members will receive substantial benefits now, without the burden and risks of further litigation. *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass 2000) (the certainty of recovery through settlement in contrast to the expense, length and uncertainty of litigation, is a strong argument in favor of settlement)

The "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

      **4.**      **The Proposed Settlement Treats Settlement Class Members Equitably Relative To Each Other**

The final Rule 23(e)(2) consideration asks courts whether the proposed settlement treats "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, the proposed settlement treats all settlement Class Members equally and fairly, and the process for receiving settlement funds is simple. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). All Class Members will be identified and sent a notice and an opportunity to opt out. Agreement, ¶¶ 5.2, 7.2, 7.3. All Settlement Class Members who do not opt out will have their alleged deficiency balances eliminated and will receive cash payments representing a pro-rata share of the net Cash Fund based on their alleged statutory damages, all without the need to submit a claim form. *Id.* ¶ 4.2.

Accordingly, this factor supports granting preliminary approval.

### 5.        The Proposed Notice To Settlement Class Members Is Adequate

Settlement Class Members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. *Manual for Complex Litig. (Fourth),* § 21.31. Under Rule 23(e)(1), when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Here, the proposed method of notification is patently adequate. The proposed Class Notice, attached as <u>Exhibit 2</u>, is clear and straightforward, providing settlement Class Members with enough information to evaluate whether to participate in the settlement. The Settlement Administrator shall provide Class Notice to the settlement Class within ten business days after Santander provides the necessary information to compile an address list for the settlement Class Members; and (b) the Class Notice shall then be sent by first class United States mail to the current addresses. Agreement, ¶ 7.2. The Class Notice will advise settlement Class Members of their rights to object and opt out and the requirements for doing so—consistent with the 2018 Amendments to Rule 23(e).

13

The proposed method of providing notice — direct first-class mail—is more than adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed notice which clearly describes the case and class members' rights meets due process requirements).

> ### 6.     The Factual Record Was Well Developed Through Independent Investigation And Discovery

To make a preliminary determination on the fairness of a proposed settlement agreement, there must be sufficient information to evaluate it. *Manual for Complex Litig. (Fourth)*, § 22.921; *Hays*, 2019 WL 427331, at \*10–11 (evaluating proposed settlement under newly amended federal rules).

Here, this litigation has been ongoing for almost two years, and the Parties have tested the merits through discovery and multiple motions and briefs, including a motion to dismiss and a motion to certify the class. As recited above, substantial discovery has been conducted, including exchanging requests for production and interrogatories and completing depositions. Santander's counsel has provided supplemental information in the course of discussions leading up to the settlement negotiations, including information about the size of the class and class-wide damages, and Class Counsel has reviewed this data. In short, this settlement is the result of a well-developed factual record.

> ### V.     The Class Should Be Certified for Settlement Purposes

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).  The proposed Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

### A.      Rule 23(b)(3)

#### 1.      Numerosity

The settlement Class easily meets Rule 23(a)'s numerosity requirement. Santander has indicated that the Settlement Class consists of approximately 3,250 Accounts. Joinder of all Class Members would not be practicable. *See, e.g., In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) ("forty individuals [are] generally found to establish numerosity").

#### 2.      Commonality

Rule 23(a) requires that the proposed class share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality demands only the existence of a "single issue common to all members of the class." *Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008).

Here, the questions of law and fact in this litigation are not only common, they are substantially identical among Settlement Class Members. Common legal issues include whether Santander's repossession and deficiency notices violate Massachusetts's UCC and the MVRISA. And all material facts are the same: All settlement Class Members had their motor vehicles repossessed by or on behalf of Santander and were sent substantially-similar post-repossession notices. Commonality is therefore met.

#### 3.      Typicality

Typicality requires that the class representatives' "injuries arise from the same events or course of conduct as do the injuries of the class." *In re Credit Suisse–AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). For virtually the same reasons discussed in the preceding section, this element is also met.

Plaintiffs have argued like all Class Members, they entered into a motor vehicle retail installment sales contract held by Santander; their vehicles were repossessed by or on behalf of

Santander, and they were sent essentially the same post-repossession notices. And Plaintiffs seek relief under the same factual and legal theories. Rule 23(a)'s typicality requirement is plainly met.

### 4.     Adequacy Of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." For the same reasons described in Section IV(B)(1) above, Plaintiffs Piazza and Yunker and Class Counsel have and will continue to adequately represent the Class.

### B.     Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient resolution of the controversy."

### 1.   Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The inquiry boils down to "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Id.* (quoting W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)).

Courts have routinely found common questions predominate where the claims relate to a common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. at 64 (requirement is "readily met" in consumer fraud cases where claim alleges single course of conduct).

The predominance prong is met here because the claims of the Class Representatives and the Settlement Class Members, and the circumstances under which these claims arise, are virtually identical. Those all flow from the same form notice. The questions of law and fact are the same. There are no significant individual issues.

### 2.  Superiority

In certifying a class for purposes of settlement, the court need not consider whether a class action is a superior method of resolving the matter because ultimately the case will never go to trial. 2 McLaughlin on Class Actions § 6:3 (12th ed.) (the "fact that a settlement class – not a litigation class – is proposed remains relevant because the court does not need to evaluate as part of its certification analysis whether a class action is superior to other available methods of adjudication").

However, even were it necessary, superiority would be met here. In determining whether a class action is superior to individual litigation, Rule 23(b)(3) lists four factors: whether individuals have a strong interest in controlling potentially separate actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential difficulties that management of a class action presents. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiff "to pool claims which would be uneconomical to litigate individually." *See Phillips Petroleum Co.*, 472 U.S. at 809. Here, each Settlement Class Member's claim is relatively small, making it uneconomic for individuals to pursue these claims

on their own. *See Grace v. Perception Technology, Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988); *Tardiff v. Knox Cty.*, 365 F.3d 1, 7 (1st Cir. 2004) (superiority met where class action is only "feasible" means for most of class recovery).

## VI.   Conclusion

The proposed Agreement is fair, reasonable, and adequate. Plaintiffs request that this Court approve the Agreement on a preliminary basis, schedule appropriate deadlines for various settlement requirements as reflected in the accompanying motion, and schedule a hearing to consider final approval of the settlement.

Respectfully submitted,

LISA PIAZZA, JOSEPH BORDEN, and
RICHARD YUNKER,
By their attorneys,

*/s/ Nicholas F. Ortiz*
_____
Nicholas F. Ortiz (BBO # 655135)
Raven Moeslinger (BBO # 687956)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
nfo@mass-legal.com

Dated:  July 30, 2021

## CERTIFICATE OF SERVICE

I, Raven Moeslinger, hereby certify that today I caused to be served the within on counsel for the defendants via ECF service.

*/s/ Raven Moeslinger*
_____
Raven Moeslinger

18