UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
LISA PIAZZA, JOSEPH BORDEN, and               )
RICHARD YUNKER,                               )
                                              )
         Plaintiffs,                          )
                                              )
v.                                            )       C.A. No. 1:19-CV-11697-ADB
                                              )
SANTANDER CONSUMER USA INC.,                  )
and JMAC DISTRIBUTION LLC,                    )
                                              )
         Defendants.                          )
_____      )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR
ATTORNEYS' FEES AND COSTS AND INCENTIVE AWARD**

# TABLE OF CONTENTS

**Page(s)**

I.   Introduction ............................................................................................................. 1

II.   Statement of the Case ............................................................................................ 2

III.   The Terms of the Settlement ................................................................................. 4

IV.   The Court Should Grant Final Approval Of This Settlement .............................. 6

  A.   Standard And Process For Approval ................................................................. 6

  B.   The Proposed Settlement Is Fair, Reasonable, Adequate, and Should Be Approved ...... 6
    1.   The Class Representatives and Class Counsel Have Adequately Represented The Class ..... 6

    2.   The Proposal Was Negotiated at Arm's Length ........................................... 7

    3.   The Relief Provided For The Class Is Adequate .......................................... 8

      a)   The Settlement provides significant benefits to the Settlement Class ......................... 9

      b)   The the proposed method of distributing relief to the Settlement Class is highly effective ................................................................................................... 16

      c)   The terms of the proposed award of attorneys' fees, including timing of payment, is reasonable ................................................................................................ 16

      d)   The costs, risks, and delay of trial and appeal weigh in favor of approval ............... 16

    4.   The Proposed Settlement Treats Settlement Class Members Equitably Relative To Each Other ............................................................................................................ 16

    5.   The Factual Record Was Well Developed Through Independent Investigation And Discovery ........................................................................................................ 16

    6.   The Notice To Settlement Class Members Was Adequate .......................... 17

  C.  The Requested Incentive Award Is Reasonable ……………………………….....18

V.   The Class Should Be Certified for Settlement Purposes .................................... 18

VI.   The Court Should Approve A Substitute Class Administrator ……………………19

VII.   The Court Should Enter A Final Approval Order On Or After December 15, 2021………20
VI.   Conclusion ............................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Products v. Windsor*,
  521 U.S. 591 (1997).............................................................................................6

*Applegate v. Formed Fiber Techs.*, LLC,
  No. 10-473, 2013 U.S. Dist. LEXIS 166171 (D. Me. Nov. 21, 2013) ..................................13

*Bacchi v. Massachusetts Mutual Life Insurance Company*,
  No. 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017)...........................................12

*Barron v. Fidelity Magellan Fund*,
  57 Mass.App.Ct. 507 (2003) ...............................................................................12

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.) .......................................................................7, 18

*In re Celexa and Lexapro Marketing and Sales Practices Litigation*,
  No. 09–2067–NMG, 2014 WL 4446464 (D.Mass. Sept. 8, 2014) .......................................18

*Coroa v. First Citizens' Federal Credit Union*,
  No. 16-CV-558 (Mass. Super. Ct. Oct. 3, 2019) ....................................................10

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ..........................................................................14

*Duhaime v. John Hancock Mutual Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997).............................................................................6

*Follansbee v. Discover Fin. Servs., Inc.*,
  No. 99 C 3827, 2000 WL 804690 (N.D. Ill. Jun. 21, 2000) ....................................14

*Hartt v. Flagship Credit Corp.*,
  No. 2:10-cv-00822-NS, (E.D. Pa. Apr. 15, 2011) ..................................................14

*Hartwell v. Americredit Fin. Srvs.*,
  No. 18-CV-11895-DJC (D. Mass Aug. 28, 2019) ............................................9, 14

*Hays v. Eaton Grp. Attorneys*, LLC,
  No. CV 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ....................................17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..............................................................12

*Kingsborough v. Sprint Communications Co., L.P.*, No. 14–12049–NMG, 2015
    WL 1605506 (D. Mass. 2015) ................................................................15

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17-cv-10219-JGD, 2017 WL 6460244 (D.Mass., 2017) ..................15

*Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985) .......................................6

*Little-King v. Hayt Hayt & Landau*,
    No. 11–5621 (MAH), 2013 WL 4874349, at *10-11 (D.N.J. Sept. 10, 2013) ......................10

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 CIV. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................14

*In re Lupron Marketing and Sales Practices Litigation*,
    228 F.R.D. 75, 98 (D.Mass.,2005) ..........................................................18

*Macedonia Church v. Lancaster Hotel, LP*,
    No. 05–0153 (TLM), 2011 WL 2360138 (D. Conn. June 9, 2011)...........................12

*In re Neurontin Marketing and Sales Practices Litigation*,
    58 F.Supp.3d 167 (D. Mass. 2014) .........................................................13

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013)...............................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05MD1720, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019)...........................6, 7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...............................................................................17

*Purdie v. Ace Cash Express, Inc.*,
    No. 301CV1754L, 2003 WL 22976611, at *2 (N.D. Tex. Dec. 11, 2003) ............................9

*Roberts v. TJX Companies, Inc.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass.  2016) .............................13

*Rolland v. Cellucci*,
    191 F.R.D. 3, 10 (D. Mass 2000) ..........................................................16

*Santos v. River Works Credit Union*,
    No. 16-0155-BLS1 (Mass. Super. Ct. Dec. 12, 2017).........................................10

*Scovil v. Fedex Ground Package Sys., Inc.*,
    No. 10-cv-515-DBH, 2014 WL 1057079 (D. Me. March 14, 2014).......................18

*Scott v. First American Title Ins. Co.*,

No. 06–cv–286–J, 2008 WL 2563460, at *2-3 (D. N.H. Jun. 24, 2008) ..................................8

*Smith v. CRST Van Expedited, Inc.,*
   No. 10–CV–1116–IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ......................14

*In re StockerYale, Inc. Sec. Litig.,*
   No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) ....................13

*In re Thirteen Appeals,*
   56 F.3d 295, 307 (1st Cir. 1995) ...........................................................................................11

*Velleman v. Workers' Credit Union,*
   No. 16-CV-03110 (Mass. Super. Ct. Aug. 22, 2019) ............................................................10

*White v. Ally Financial, Inc.,*
   No. 3:18-cv-30143-MGM (D. Mass. Oct. 8, 2021) ..............................................................14

*Williams v. Am. Honda Fin.,*
   No. 14-12859-LTS (D. Mass. 2019)......................................................................................10

## Statutes

G.L. c. 106, § 9-614 and § 9-616 ...............................................................................................2, 12

G.L. c. 255B, § 20B .....................................................................................................2, 3, 15, 16

28 U.S.C. 1715(b) ..............................................................................................................................17

## Rules

Fed. R. Civ. P. 23(a) .................................................................................................................6, 19

Fed. R. Civ. P. 23(b)(3)....................................................................................................................19

Fed. R. Civ. P. 23(c)(2)....................................................................................................................17

Fed. R. Civ. P. 23(e) ...................................................................................2, 6, 7, 8, 9, 15, 16, 17

## Other Authorities

Herbert Lemelman, *Massachusetts Practice Series: Manual on Uniform Commercial Code*, 25A
   Mass. Prac. § 9:234 (3d ed.). ...............................................................................................12

*Manual for Complex Litig. (Fourth)* ..............................................................................................17

## I.    Introduction

Plaintiffs Lisa Piazza and Richard Yunker ("Plaintiffs"), individually and on behalf of the Settlement Class, move the Court for final approval of the Class Action Settlement Agreement ("Settlement") reached with Defendant Santander Consumer USA, Inc. ("Santander") and approval of their request for attorneys' fees and costs and incentive awards.

The Settlement resolves claims brought by Plaintiffs on behalf of themselves and others similarly-situated for alleged violations of the Massachusetts Uniform Commercial Code, M.G.L. c. 106, § 9-600, *et seq*. stemming from Santander's form post-repossession notices. Under the Settlement, Class Members' alleged outstanding deficiency debts, which are estimated to total approximately $31.2 million, will be adjudged uncollectable. Santander will also establish a cash fund of $5,600,000 to compensate Class Members. Class Members are not required to submit claim forms to receive the benefits of the Settlement. No residue will revert to Santander, but will be paid over in equal parts to two *cy pres* recipients, National Consumer Law Center, Inc. (a nonprofit focused on consumer protection) and Local Initiatives Support Corporation (a nonprofit dedicated to community development).

On August 4, 2021, the Court preliminarily approved the Settlement, certified a Settlement Class, approved the issuance of notice, and set a hearing on final approval on November 17, 2021. ECF #89.  In September 2021, the Settlement Administrator, First Class, Inc., mailed the Court-approved notice to the Settlement Class.  *See* Ex. 2, Declaration of Bailey Hughes ("Hughes Decl."), ¶ 7.  90 percent of the notices were successfully delivered and no

Class Member has objected to the Settlement.  *Id*. at ¶¶ 16-17.  In addition, only twelve Settlement Class Members have sought to exclude themselves from the Settlement.[1]

As set forth more fully herein, the low opt-out rate, coupled with the lack of objections, underscores the bottom line: This Settlement is a good deal for the Class. The Plaintiffs submit that the Settlement is fair, reasonable, and adequate, as it provides substantial benefits to Settlement Class Members, especially given the complexity of the case, potential recovery, possible appellate issues, and the general risks of any litigation. The Plaintiffs further submit that the proposed attorneys' fees, litigation expenses, and incentive awards are fair and reasonable.

For the reasons set forth below, Plaintiffs request that the Court grant approval of this Settlement pursuant to Fed. R. Civ. P. 23(e) and enter the proposed Final Approval Order attached here to as Exhibit 3.

## II.   Statement of the Case

### *Factual Background*

This action challenges the notices Santander sent to Massachusetts borrowers after repossessing their vehicles. Specifically, the First Amended Complaint (ECF # 46) ("Complaint") alleges that Santander's form notices are defective because they inform consumers that their deficiency liability will be calculated based on their vehicles' *sale price*, while Massachusetts law requires that such repossession deficiencies be calculated based on the vehicle's *fair market value.* Massachusetts Retail Installment Sales Act ("MVRISA"), G.L. c. 255B, § 20B(e)(1). Plaintiffs' Complaint alleges that Santander's notices violated the Massachusetts U.C.C., M.G.L. c. 106, §§ 9-614 and 9-616 (which requires an accurate explanation of the basis of a potential deficiency in post-repossession notices) and the MVRISA.

---

[1] Eleven of these opt-outs were submitted in error by Class Members who mistook the opt-out form to be a claim form. The remaining opt-out form is not facially valid.  As set forth in Plaintiffs' Consent Motion to Strike Opt-Outs, the Court should strike all 12 opt-outs.

The Complaint alleged that the Plaintiffs and the class are entitled to statutory damages and are not liable for the alleged deficiencies.

The facts of Plaintiffs' repossessions are typical. After Santander repossessed each of the named Plaintiff's vehicles, Santander sent each a Pre-Sale Notice advising them that it would sell their vehicles and hold each liable for a deficiency if the proceeds did not cover the debt. Complaint, ¶¶ 37-40. The Pre-Sale Notice described their deficiency liability as follows: "The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If the net proceeds at the sale, after expenses, does not equal your unpaid balance, and if the total unpaid balance exceeds $2,000, you may owe us the difference, subject to applicable law (including Mass. Gen. Laws. Ch. 255B § 20B)."  *Id*. at ¶¶ 38-39, Exh. A, Pre-Sale Notices.

Santander subsequently sold each of the named Plaintiffs' vehicles and sent them each a Post-Sale Notice demanding payment on loan deficiencies based on the difference between their loan balance and the proceeds of a private sale, instead of the fair market values of their vehicles. Complaint, ¶¶ 43-44, Exh. B, Post-Sale Notices.

### *Procedural Background*

Plaintiffs commenced this action on July 11, 2019 in Middlesex County Superior Court. ECF #1.  Santander removed this case to this Court. *Id*.  Santander subsequently filed a motion to dismiss the complaint on grounds that its post-repossession notices did not violate the U.C.C. or the MVRISA because, among other things, they included a reference to the MVRISA.  ECF #4, 5.  Plaintiffs opposed the motion, which was ultimately denied by the Court on March 12, 2020. ECF #8, 21.

On May 6, 2020, Plaintiffs filed a motion for class certification, seeking to certify a class consisting of individuals to whom Santander sent a Pre-Sale Notice.  ECF #26.  At Santander's

request, the Court permitted Santander to take written discovery and depositions prior to responding to the motion for class certification.  ECF #37, 38.  Plaintiffs served interrogatories and document requests on Santander, to which Santander responded.  And Santander served document requests on Plaintiff Lisa Piazza (to which she responded) and completed depositions of Plaintiffs Lisa Piazza and Richard Yunker.  During discovery, Santander produced Post-Sale Notices it sent to the Plaintiffs, and Plaintiffs moved to amend the complaint to add allegations of additional violations related to the Post-Sale Notices, which the Court allowed.  ECF #41, 43.  Plaintiffs then followed with an amended motion for class certification adding a second proposed class consisting of individuals to whom Santander sent a Post-Sale Notice, which Santander opposed.  ECF # 44, 59.

Throughout the course of the litigation, the Parties had on-again, off-again settlement discussions.  After the filing of the amended motion for class certification, those communications intensified.  Believing they were making significant progress towards reaching a class-wide settlement, the Parties submitted a joint status report on November 20, 2020, informing the Court of their settlement discussions and requesting that the Court stay a decision on Plaintiffs' amended motion for class certification pending the conclusion of those discussions.  ECF #73.

After several months of extensive and detailed negotiations, the Parties were able to reach the settlement that is before this Court.  Based on their review and analysis of the relevant facts and legal principles, Plaintiffs and their counsel believe that the terms and conditions of the Settlement are fair, reasonable, and adequate, and in the best interests of the Plaintiffs and the proposed Settlement Class. Exhibit 4, Declaration of Class Counsel, ¶ 7. Santander denies all liability, but has agreed to the Settlement to avoid continued costs and the risks of litigation.

### III.    The Terms of the Settlement

The material terms of the settlement include the following:

1.      *Settlement Class:* The Settlement Class is composed of all Accounts with respect to which Santander sent a notice identical and/or substantially similar to the presale notices attached as Exhibit A to the Amended Complaint [ECF #46] (a "Contested Pre-Sale Notice") at any time during the Class Period[2] and sold leased, licensed or otherwise disposed of the vehicle referred to in such notice pursuant to such Contested Pre-Sale Notice, and/or sent a notice identical and/or substantially similar to the post-sale notice attached as Exhibit B to the Amended Complaint, on or after July 22, 2016; excluding: (i) any Account that includes within the applicable RISC (as defined in Section 1), a provision requiring the parties to submit to binding non-class arbitration in lieu of participation in litigation upon the election of either party, and (ii) any Account that is subject to a judgment or a release agreement in favor of Santander.

2.      *Relief for Settlement Class Members*:

  (i)      Santander will pay a total of $5.6 million (the "Cash Fund") to be used to make payments to Class Members, pay any court approved attorneys' fees and expenses, and service awards to the Plaintiffs. Separately, Santander will pay up to $30,000 towards the costs of settlement administration, with any costs exceeding $30,000 to be deducted from the Cash Fund.  The Parties do not expect these costs to exceed $30,000. Santander will tender the Cash Fund to the Settlement Administrator within 15 days of the Effective Date of the Settlement;

  (ii)     Payments to Class Members will be calculated as follows: The balance of the Cash Fund after the payment of costs of notice and administration exceeding $30,000, if any, service awards, and attorneys' fees and expenses shall be paid to Settlement Class Members on a pro-rata basis based on their alleged statutory damages as compared to the statutory damages of other Settlement Class Members; and

  (iii)    The contested liability of all Settlement Class Members (whose vehicles were disposed of by Santander) will be adjudged uncollectable, a sum that is estimated to be approximately $31.2 million.

3.      *Attorneys' Fees and Expenses*: Class Counsel is petitioning the Court for an award of reasonable attorneys' fees and expenses of one-third of the Cash Fund (approximately $1.86 million), the equivalent of approximately five percent of the total monetary and debt relief provided to the Settlement Class. Santander does not object to this petition.

4.      *Incentive Award*: Plaintiffs Lisa Piazza and Richard Yunker are petitioning for incentive awards of $7,500 to each, to be paid from the Cash Fund and subject to Court approval. Santander does not object to this petition.

5.      *Release*: Settlement Class Members will release all claims that were asserted in the Action or that could have been asserted based on the same operative facts.

---

[2] The "Class Period" is the period from June 11, 2015 through September 8, 2019.

**IV.    The Court Should Grant Final Approval Of This Settlement**

**A.    Standard And Process For Approval**

A class settlement requires court approval.  Fed. R. Civ. P. 23(e).  A court may approve a settlement if it is fair, reasonable, and adequate after considering each of the factors set forth in Rule 23(e)(2)(A)-(D), each of which is addressed below.  The First Circuit has long recognized a strong public interest in favor of settling class actions. *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985) ("…we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved …").

**B.    The Proposed Settlement Is Fair, Reasonable, Adequate, and Should Be Approved**

**1.    The Class Representatives and Class Counsel Have Adequately Represented The Class**

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720, 2019 WL 359981, at *15 (considering adequacy requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts look to whether representatives' interest are antagonistic to those of the class members). Where, as here, the injuries allegedly suffered by the named plaintiffs are the same as those the class allegedly suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Here, the proposed class representatives, Lisa Piazza and Richard Yunker, loyally and competently represented the Class for the almost two years of hard-fought litigation.  Both Ms.

6

Piazza and Mr. Yunker actively participated in discovery and were each deposed.  Mr. Yunker also rejected an individual settlement offer that would have likely netted him more relief than he will receive as a class representative and Settlement Class Member, demonstrating his loyalty to the class.  Plaintiffs have no interests that are antagonistic to or in conflict with the Settlement Class. And, if Ms. Piazza and Mr. Yunker were not ready and willing to serve as class representatives, there would be no settlement benefits at all for the class.[3]

In addition, Class Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in substantial discovery, litigated multiple motions, and are prepared to continue to devote sufficient resources to representing the Class. Class Counsel are seasoned class action practitioners whose lengthy experience in consumer law and class action litigation is demonstrated by the declaration to Plaintiffs' motion. *See* Exhibit 4, Declaration of Class Counsel.

The "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

### 2.    The Proposal Was Negotiated at Arm's Length

There is typically an initial presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *19; *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").

Here, the parties vigorously litigated this case for approximately two years, including multiple contested motions and substantial discovery. The parties also negotiated frequently

---

[3] For the avoidance of doubt, Plaintiff Joseph Borden will not be serving as a class representative.

during the course of the litigation; these efforts intensified after Plaintiffs filed their amended motion for class certification. After obtaining sufficient information to meaningfully discuss resolution of the case, the Parties, through counsel, engaged in months-long, arm's length negotiations. The negotiations were productive and substantive, including discussions about the merits of Plaintiffs' claims, and the repossession notices and damages at issue, and they ultimately resulted in the Settlement before this Court.

The parties' adversarial position throughout the course of this litigation confirms that the settlement was the result of an arms-length negotiation conducted by experienced counsel and therefore should be found presumptively reasonable. *See*, *e.g.*, *Scott v. First American Title Ins. Co.*, No. 06–cv–286–J, 2008 WL 2563460, at *2-3 (D. N.H. Jun. 24, 2008) (preliminarily approving class settlement, reasoning that filing and opposing two motions to dismiss and a motion to remand before reaching settlement reflected that the parties were "adversaries from [the litigation's] inception" and therefore that the agreement was reached through arms-length negotiation).

The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of final approval.

### 3.        The Relief Provided For The Class Is Adequate

The proposed relief to the Settlement Class is also adequate. Rule 23(e)(2)(C) provides factors to guide what constitutes adequate relief:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C). The proposed settlement here provides significant, meaningful, and immediate benefits to the Settlement Class, while avoiding potentially years of delays and the risks inherent in all complex litigation, including appeals.

a)      **The Settlement provides significant benefits to the Settlement Class**

The Settlement will, if approved, result in approximately $31.2 million in alleged deficiency debts being adjudged uncollectable – this alone represents an average of approximately $9,600 in relief for each Settlement Class Member's Account. Deficiency debts arising out of repossessions are burdensome, as already-cash-strapped debtors struggle to handle collection efforts arising out of often-large alleged deficiencies without a vehicle often needed for income production. *See*, *e.g.*, *Purdie v. Ace Cash Express, Inc.*, No. Civ. A. 301CV1754L, 2003 WL 22976611, at *2 (N.D. Tex. Dec. 11, 2003) (debt relief was particularly significant benefit because "continued collection efforts for unpaid loans [were] an enormous source of strain and stress" on class members).

Additionally, Santander will establish a Cash Fund of $5,600,000 to be used to compensate Class Members. These funds will pay Class Members on a pro-rata basis, based on their alleged statutory damages.  After proposed deductions for fees and incentives, the average cash payments will be approximately $1,144 per Settlement Class Member Account.  The Cash Fund is non-reversionary, ensuring that none of the money will be returned to Santander.

Between cash payments and debt relief, after proposed deductions for attorneys' fees, costs, and an incentive award, each Settlement Class Member Account will receive an average benefit of approximately $10,744 in relief per account.   Under the circumstances, this relief is more than adequate, particularly when compared with similar cases based on defective repossession notices.  *See, e.g., Hartwell v. Americredit Fin. Srvs.*, 18-CV-11895-DJC (D. Mass

9

Aug. 28, 2019) (total cash and debt relief averaging $2,727.97 per account after attorneys' fees); *Williams v. Am. Honda Fin.*, C.A. No. 14-12859-LTS (D. Mass. 2019) (total cash and debt relief averaging $4,971.14 per class member after attorneys' fees); *Santos v. River Works Credit Union*, No. 16-0155-BLS1 (*Mass. Super. Ct. Dec. 12, 2017) (cash-only relief of $1,197.31 per class member after attorneys' fees); *Coroa v. First Citizens' Federal Credit Union*, No. 16-CV-558 (Mass. Super. Ct. Oct. 3, 2019) (total cash and debt relief averaging $6,898.41 per class member after attorneys' fees)**;** *Velleman v. Workers' Credit Union*, No. 16-CV-03110 (Mass. Super. Ct. Aug. 22, 2019) (cash-only relief of $1,129.81 per class member after attorneys' fees)

Additionally, Santander changed its post-repossession notices after this litigation commenced such that they now reference the "fair market value" language (the absence of which language forms the basis of this litigation), a factor that weighs in favor of approving the settlement. *Little-King v. Hayt Hayt & Landau*, No. 11–5621 (MAH), 2013 WL 4874349, at *10-11 (D.N.J. Sept. 10, 2013) (noting that defendant ceased using allegedly unlawful debt collection letter as factor militating in favor of approving settlement).

### b)  The the proposed method of distributing relief to the Settlement Class is highly effective

Payments to Class Members will be calculated as a pro-rata share of the net Cash Fund based on Class Members' alleged statutory damages as compared to the statutory damages of other Class Members.  Settlement, ¶ 4.2.  Here, no claims forms are required. Instead, all Settlement Class Members will automatically have their alleged deficiency balances eliminated and checks will be automatically mailed to them.  *Id*. at ¶ 4.1. This method of distributing relief is effective and efficient and weighs in favor of granting settlement approval.

### c)  The terms of the proposed award of attorneys' fees, including timing of payment, is reasonable

The parties vigorously litigated this action for approximately two years, which involved contested motions, written discovery (including interrogatories and documents requests and productions), depositions, a motion for class certification and a related amendment, and several protracted rounds of settlement negotiations.  The result now before the Court– $36.8 million in relief to Class Members – is substantial and meaningful.  Class Counsel litigated the case entirely on a contingent fee basis, running of the risk of non-recovery despite multiple years of litigation.

Class Counsel now seeks an award of attorneys' fees and costs in the amount of $1,866,666, which represents approximately 5.1 percent of the total settlement value obtained for the Settlement Class (or one-third of the cash fund), to compensate and reimburse them for the work already performed in this case, the work remaining to be performed in connection with the Settlement, and for the risk associated with prosecuting this case on a contingent-fee basis. This request is in line with other fee awards submitted and approved by courts in this Circuit.

This Settlement, if approved, will yield a common fund. When awarding fees based a common fund, the First Circuit has noted that the "prevailing practice" is the "percentage of the fund" (POF) method, rather than counsel's lodestar.  *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995).  The First Circuit has reasoned that the POF method "enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency." *Id.* Under the latter approach, "attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement." *Id.*, citing the Third Circuit Report, 108 F.R.D. at 247–48 (finding that, in common fund cases, the lodestar method "encourag[es] lawyers to expend excessive hours" and "creates a disincentive for the early settlement of cases") (additional citation omitted).  Consequently, "[i]f the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options—

but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended." *Id.*

Percentage of the common fund fee recoveries also recognize and encourage attorneys to provide contingency fee representation to individuals who cannot afford to pay hourly fees. As is normal in consumer protection cases, and class actions in particular, Plaintiffs' Counsel accepted this case on a full contingent fee, receiving no payment up front and bearing all the staff salaries, overhead, litigation costs, and risks associated with litigating the case. Despite investing significant time and resources into a case, attorneys undertaking consumer cases on a contingent-fee basis risk receiving nothing when a case is unsuccessful, or when a defendant becomes insolvent. Consequently, this type of practice only remains a viably way to vindicate consumer rights if attorneys who undertake such cases can recover their full contingency for their successful cases. *See*, *e.g.*, *Macedonia Church v. Lancaster Hotel, LP*, No. 05–0153 (TLM), 2011 WL 2360138, at *14 (D. Conn. June 9, 2011) ("the attorneys' fees requested [are] entirely contingent upon success. Proposed Class Counsel risk[s] time and effort and advance[s] costs and expenses, with no ultimate guarantee of compensation"); *Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"). Granting counsel their requested fees helps ensure that contingency-fee arrangements remain accessible to consumers deprived of important consumer protections like those at issue in this case.[4] *See, e.g., Barron v. Fidelity Magellan Fund*, 57 Mass.App.Ct. 507,

---

[4] "Sections 9-614 and 9-616 [of the U.C.C.] continue the expansion of consumer-oriented rules in the Code. The thrust of these uniform provisions is to advance the notion of communications to the debtor, which are informative and helpful, as well as consumer friendly, in consumer dispositions." *See* Herbert Lemelman, *Massachusetts Practice Series: Manual on Uniform Commercial Code*, 25A Mass. Prac. § 9:234 (3d ed.).

643 (2003) ("[w]e have long recognized that the award of attorney's fees and costs in consumer actions can be essential to the enforcement of G.L. c. 93A and the important public policy which it serves").

Here, the benefit to the class is easily quantified and substantial. Class Counsel's efforts resulted in a settlement with a total value of $36,800,000, including a $5.6 million cash fund which will be distributed to thousands of Settlement Class Members after Court approved fees, costs, and incentive payment are deducted.   Even after these proposed deductions, Class Members will receive an average of approximately $10,744 in total relief.

While "the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mutual Life Insurance Company*, No. 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017) (citing *Mazola v. May Dept. Stores Co.*, No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999)); *In re Neurontin Marketing and Sales Practices Litigation*, 58 F.Supp.3d 167, 172 (D. Mass. 2014) (citing study that nearly two-thirds of class action fee awards based on the percentage method were between 25 percent and 35 percent of the common fund; and noting that in the First Circuit mean was 27 percent and median was 25 percent); *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass.  2016) (awarding fees of one-third of common fund); *Applegate v. Formed Fiber Techs.*, LLC, No. 10-473, 2013 U.S. Dist. LEXIS 166171, at *3 (D. Me. Nov. 21, 2013) (awarding one-third of settlement fund); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007) (approving award of one-third of common fund).

In valuing the recovery obtained under a settlement, courts consider the waiver of debt in addition to cash. *See, e.g., Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (including cash and student loan debt forgiveness in valuing settlement for purposes of determining reasonable attorney's fees); *Smith v. CRST Van Expedited, Inc.*, No. 10–CV–1116–IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (in applying percentage of the fund method, considering "total financial benefit" to the class, which included cash payments and "reimbursement[s]/debt relief"); *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 C 3827, 2000 WL 804690, at *2 (N.D. Ill. Jun. 21, 2000) (valuing settlement to include debt forgiveness and account credits, and evaluating fee against that value); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV. 1262 RWS, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) *aff'd sub nom.*; *Adams v. Rose,* No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003).

Here, the requested percentage – 5.1 percent of the total relief (or one-third of the cash fund) falls within the "benchmark" of common fund fee awards and is in line with awards in similar class action settlements.  *See, e.g., White v. Ally Financial, Inc.*, No. 3:18-cv-30143-MGM (D. Mass. Oct. 8, 2021) (U.C.C. defective repossession notice class settlement consisting of both cash payments and debt relief, granting attorneys' fees application representing 15.6 percent of total settlement value or 50 percent of cash component); *Hartwell v. AmeriCredit Financial Services, Inc.*, No. 1:18-cv-11895-DJC (D. Mass. Aug. 28, 2019) (U.C.C. post-repossession notice class settlement consisting of both cash payments and debt relief, granting attorneys' fees application representing 6.5 percent of total settlement value); *Hartt v. Flagship Credit Corp.*, No. 2:10-cv-00822-NS, (E.D. Pa. Apr. 15, 2011) (defective notice class settlement consisting of cash and debt relief, approving fees representing 6.7 percent of total settlement value, or 37 percent of cash).

Moreover, no Settlement Class Member has objected to the requested fee, which militates in favor of approval of the request. *See, e.g.*, *Kingsborough v. Sprint Communications Co., L.P.*, No. 14–12049–NMG, 2015 WL 1605506, at *3 (D. Mass. 2015) ("[t]he absence of objection by class members to Settlement Class Counsel's fee-and-expense request further supports a finding that it is reasonable").

Therefore, Class Counsel requests that the Court award the fee in the requested amount.

> ### d)      The costs, risks, and delay of trial and appeal weigh in favor of approval

Another factor in evaluating the adequacy of class relief is the costs, risks, and delay of trial and appeal. Rule 23(e)(2)(C)(i). There are multiple tangible risks here.

First, a judgment in Plaintiffs' favor is not guaranteed.  The Parties vigorously dispute liability.  Santander contends that its notices complied with the U.C.C. and MVRISA because it referenced the MVRISA therein and properly calculated debtors' deficiency balances.  *See* ECF #46, Complaint, <u>Exhibit A</u>, Pre-Sale Notices (borrower's potential deficiency "subject to applicable law (including Mass. Gen. Laws ch. 255B, § 20B"). If Santander's position were credited by this Court, the Plaintiffs and Settlement Class would receive nothing.  And even if the Court adopted Plaintiffs' position – that the notices violated the U.C.C. and MVRISA – Santander would surely appeal the decision, causing significant delay and additional risk of non-recovery if the First Circuit held differently.

Second, whether Plaintiffs and Class Members can recover a significant part of the damages sought in this case – debt relief – is an unsettled legal question.  Plaintiffs contend that MVRISA incorporates the U.C.C.'s notice provisions[5] and that a lender can only recover a

---

[5] *See* M.G.L. c. 255B, § 20B(d)("Unless displaced by the provisions of this section and section twenty A the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106.")

deficiency "provided he has complied with all provisions of [M.G.L. c. 255B, § 20B]."  M.G.L. c. 255B, §20B(e)(1).  This position has not yet been endorsed by any court, and therefore, absent this Settlement, Class Members may lose significant relief and be liable for many millions in deficiency debts.

Instead of the foregoing risks and delays, if approved by this Court, Settlement Class Members will receive substantial and certain benefits now without waiting years for an uncertain outcome. *See, e.g., Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass 2000) (the certainty of recovery through settlement in contrast to the expense, length and uncertainty of litigation, is a strong argument in favor of settlement)

The "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of final approval.

### 4.     The Proposed Settlement Treats Settlement Class Members Equitably Relative To Each Other

The final Rule 23(e)(2) consideration asks courts whether the proposed settlement treats "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, the proposed settlement treats all settlement Class Members equally and fairly, and the process for receiving settlement funds is simple. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). All Class Members were identified and sent a notice and an opportunity to opt out. Ex. 1, Settlement, ¶¶ 5.2, 7.2, 7.3; Ex. 2, Hughes Dec. ¶¶ 14, 18.  All Settlement Class Members will have their alleged deficiency balances eliminated and will receive cash payments representing a pro-rata share of the net Cash Fund based on their alleged statutory damages, all without the need to submit a claim form. Settlement, ¶ 4.2.

Accordingly, this factor supports granting final approval.

### 5.     The Factual Record Was Well Developed Through Independent Investigation And Discovery

To make a determination on the fairness of a proposed settlement agreement, there must

be sufficient information to evaluate it. *Manual for Complex Litig. (Fourth)*, § 22.921; *Hays v.*

*Eaton Grp. Attorneys*, LLC, No. CV 17-88, 2019 WL 427331, at *10-11 (M.D. La. Feb. 4, 2019)

(evaluating proposed settlement under newly amended federal rules).

Here, this litigation has been ongoing for approximately two years, and the prties have

tested the merits through discovery and multiple motions and briefs, including a motion to

dismiss and a motion to certify the class. As recited above, substantial discovery has been

completed, including exchanging requests for production and interrogatories and depositions.

Santander also provided additional information and data during the course of negotiations

leading to the Settlement. In short, this settlement is the result of a well-developed factual record.

### 6.    The Notice To Class Members Was Adequate

Settlement Class Members are entitled to notice of any proposed settlement and an

opportunity to object or opt out before it is finally approved by the Court. *Manual for Complex*

*Litig. (Fourth),* § 21.31. Under Rule 23(e)(1), when approving a class action settlement, the

district court "must direct notice in a reasonable manner to all class members who would be

bound by the proposal."

Here, the method of notification was patently adequate. The Class Notice was clear and

straightforward, provided Settlement Class Members with enough information to evaluate

whether to participate in the Settlement. The Notice advised settlement Class Members of their

rights to object and opt out and the requirements for doing so—consistent with the 2018

Amendments to Rule 23(e). The Settlement Administrator sent Notice by first class United States

mail to each Class member in accordance with Settlement and successfully reached 90 percent of

the class.  Ex. 2, Hughes Dec., ¶¶ 8, 16.

This method of providing notice—direct first-class mail—was more than adequate under

Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (individual mailed

notice which clearly describes the case and class members' rights meets due process requirements).

**C.     The Requested Incentive Award Is Reasonable**

The Class Representatives seek approval of incentive awards of $7,500 each.  "Plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D.Mass., 2017).  "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015).

Here, the Class Representatives substantially contributed to the case by participating in interviews with counsel, providing documents, reviewing pleadings, conferring on settlement discussions, responding to discovery, and testifying at depositions. If they had not been willing to bring this case and stay with it during the course of the litigation, the Class would have received nothing.

Comparisons to incentive awards in other class action settlements demonstrate that this amount is reasonable and fair.  *See, e.g., Lauture v. A.C. Moore Arts & Crafts, Inc.*, *supra*, at *2 (D.Mass., 2017) (incentive awards of $15,000 to each class representative); *In re Lupron Marketing and Sales Practices Litigation, 228 F.R.D. 75, 98 (D.Mass.,2005)* (approving incentive payments of up to $25,000); *In re Celexa and Lexapro Marketing and Sales Practices Litigation,* No. 09–2067–NMG, 2014 WL 4446464 (D.Mass. Sept. 8, 2014) (incentive payments of $10,000 to each class representative); *Scovil v. Fedex Ground Package Sys., Inc.*, No 10-cv-515-DBH, 2014 WL 1057079, at *7-8 (D. Me. March 14, 2014) (awards from $15,000 to $20,000 to named plaintiffs).

Therefore, the requested incentive payments should be approved.

## V.    The Class Should Be Certified for Settlement Purposes

The Court certified a Settlement Class in this case on August 4, 2021. ECF #89.  For all of the reasons contained in the memorandum in support of preliminary approval, ECF # 88, which have not changed, the Settlement Class meets all requirements of Rules 23(a) and 23(b)(3), and should be finally certified for settlement purposes. The Settlement Class is sufficiently numerous because it includes approximately 3,935 Class Members (consisting of 3,250 Class Member Accounts), satisfies commonality because whether Santander's notices violated applicable law are identical among Class Members based on standard language in form notices, satisfies typicality and adequacy because Plaintiffs' claims arise from the same facts as other settlement Class Members and they have no conflict with the Settlement Class. In addition, predominance is satisfied because the claims of Plaintiffs and the Class Members, and the circumstances under which these claims arise, are virtually identical and predominate over any individual issues.

## VI.    The Court Should Approve A Substitute Class Administrator

The current Settlement Administrator, First Class, Inc., recently informed Class Counsel that, because it will be closing in the first quarter of next year, it is unable to continue as the Administrator in this case, and it will not complete check distributions to Class Members or any other post-approval administrative work.  Class Counsel wishes to substitute American Legal Claim Services LLC ("American Legal") as the Settlement Administrator in this case, an entity with 15 years of experience in class action administration. The Defendant has no objection. Plaintiffs request that the Court approve American Legal's appointment as a replacement class administrator.

**VII.    The Court Should Enter A Final Approval Order On Or After December 15, 2021**

The Class Action Fairness Act of 2005, 28 U.S.C. 1715(b), requires that a defendant party to a class action settlement issue notice to appropriate state and federal officials.  In turn, "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice…"  28 U.S.C. 1715(d).

Here, Santander issued the required notice to the appropriate state and federal officials on September 15, 2021.  In accordance with 28 U.S.C. 1715(d), Plaintiffs request that the Court enter a final approval order 90 days thereafter, on or after December 15, 2021.

**VIII.    Conclusion**

The proposed Settlement is fair, reasonable, and adequate. Plaintiffs respectfully request that the Court approve the Settlement and Plaintiffs' application for attorneys' fees, costs, and incentive awards.

Respectfully submitted,

LISA PIAZZA, JOSEPH BORDEN, and
RICHARD YUNKER,
By their attorneys,

*/s/ Nicholas F. Ortiz*

_____
Nicholas F. Ortiz (BBO # 655135)
Raven Moeslinger (BBO # 687956)
Law Office of Nicholas F. Ortiz, P.C.
50 Congress Street, Suite 540
Boston, MA 02109
(617) 338-9400
nfo@mass-legal.com

Dated:  November 12, 2021

## **CERTIFICATE OF SERVICE**

I, Raven Moeslinger, hereby certify that today I caused to be served the within on counsel for the defendants via ECF service.

*/s/ Raven Moeslinger*

_____

Raven Moeslinger